13519

HASELDEN v. SCHEIN
(166 S. E., 634)

*Messrs. Nathan & Sinkler,* for appellant,

*Mr. G. W. Beckett,* for respondent,

November 21, 1932.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Plaintiff, the respondent, seeks by this action to enjoin the defendant from obstructing an easement which plaintiff claims over an alleyway, on the property of the defendant, in the City of Beaufort, S. C., and seeks to recover the sum of $1,000.00 damages for alleged obstruction thereof.

The defendant, the appellant here, for answer denies the existence of such easement, and alleges that plaintiff is estopped to set up a claim to such easement by reason of the estoppel which had existed against plaintiff's grantor.

The matter was heard by Judge J. Henry Johnson at chambers, by consent of counsel, upon an agreed statement of facts. He filed his decree adjudging and ordering that plaintiff have an injunction against the defendant against any interference with the use of said right-of-way which might impair or defeat the easement, and "that she be and is hereby required to move the fence back to the line of the eastern side of the building formerly known as the Palace Market." From this decree the appeal comes to this Court.

From the "Agreed Statement of Facts," set out in the transcript of record, we condense this shorter, but sufficient, statement:

The property on both sides of and including the disputed right-of-way was owned in fee by J. R. Bellamy and L. H. Little, Sr.; they sold to Chris Culuris a lot fronting on Bay Street, in the City of Beaufort, S. C., with certain defined boundaries, and by the same deed of conveyance covenanted "that a private right-of-way ingress and egress four (4) feet wide and extending from Bay Street on the south to Port Republic Street on the north shall be maintained as appurtenant to the land hereby conveyed; but the same shall not be or become (evidently something left out here in re-

cording) retain the right to maintain gates or doors in and upon the same, and to keep the same free and clear of any and all obstacles to its use as a way for the use of the occupants of the property on both sides thereof; said way to be adjacent to and west of the premises above granted and described; but nothing herein contained shall be construed to prevent the grantor herein from building over the same so long as it is open and unobstructed and ten feet high." This deed was dated April 23, 1921.

At the time of this conveyance, the property upon which this servitude was imposed was owned by the same grantors, J. R. Bellamy and L. H. Little, Sr. Subsequently, to wit, November 23, 1921, L. H. Little, Sr., conveyed to J. R. Bellamy "all his right, title and interest in and to the balance of the property, measuring thirty feet nine inches (30' 9"), being the above premises conveyed to Bellamy and Little by Epstin, less the premises heretofore conveyed to Chris Culuris." May 22, 1924, Bellamy conveyed this last-mentioned property to Beaufort Bank.

Bellamy and Little foreclosed the purchase-money mortgage given to them by Culuris, and at the sale it was bid off by J. R. Bellamy, to whom deed was made June 4, 1925.

J. R. Bellamy became insolvent and Hal R. Pollitzer was appointed receiver of his estate. By deed dated February 21, 1927, Pollitzer conveyed to M. V. Haselden, plaintiff, the property conveyed to Culuris by Bellamy and Little. This deed makes no mention of the easement appurtenant thereto.

November 10, 1927, W. J. Thomas, as receiver of Beaufort Bank, conveyed to Annie Schein the property conveyed to Beaufort Bank by J. R. Bellamy. This deed makes no reference to the easement.

The appeal assails the decree of the Circuit Court upon the grounds stated in seven exceptions, which appellant's counsel, in his brief, elects to treat under three heads, which method of treatment we adopt. They are:

(1) Does estoppel operate to defeat a claim of easement, or is it necessary for a merger of the dominant and servient

estates to be had before the right of dominant estate in such easement can be barred?

(2) Was the easement so limited that it did not include the right of user by patrons of a picture house on the rear of the lot, the interference with such user being the basis of plaintiff's claim for injunction?

(3) Do the pleadings and facts as agreed on entitle plaintiff to relief by injunction, or is his remedy by an action at law for damages?

Appellant's contention under the first head is that the Circuit Judge erred in holding that there was no merger of the dominant and servient estates in Bellamy, but that, if there was no merger, nevertheless plaintiff is estopped to claim the easement because his predecessor in title, Bellamy, was estopped to claim it for the reason that Bellamy had conveyed the servient tenement to Beaufort Bank without stating in the deed that it was subject to this easement, and the bank had conveyed it to the defendant without making any mention of the easement. Hence, if Bellamy was estopped, the plaintiff, as his successor in title of the dominant estate, is estopped.

Was there a merger? Or, more strictly speaking, was there an extinguishment of the easement?

. The contention of the appellant is that it was extinguished (1) by the uniting in Bellamy of the title in fee to the dominant and servient estates; or (2) by the conveyance of the servient tenement to Annie Schein without notice of the easement.

Was the title to the dominant and servient estates ever vested in Bellamy at one and the same time? When the easement came into existence, the dominant and servient estates were owned by Bellamy and Little. Their deed of conveyance to Culuris imposed upon their own land an easement in favor of the land conveyed to Culuris. The Culuris property became the dominant estate. Thereupon Bellamy bought the interest of Little in the servient estate. This he

conveyed to Beaufort Bank, which in turn conveyed it to Annie Schein. When he reacquired the title to the property which he and Little had sold to Culuris, the title to the servient estate was in the bank. It never was in Bellamy at the same time that he owned the dominant estate.

There can be no doubt that, if the owner of the servient estate over which a right-of-way exists, acquires the fee-simple title to the dominant estate, the right-of-way is extinguished, because "The essential ingredient of a right-of-way would be wanting; it would not be a right-of-way over another's land, but over his own land." *Pearce v. McClenaghan,* 5 Rich., 178, 187, 55 Am. Dec., 710.

"An easement is extinguished if the titles to both the dominant and servient tenements become vested in fee in the same person, since the user corresponding to the easement is exercised over one's own land, rather than over that of another, and is a mere ordinary incident of the right of ownership." The Modern Law of Real Estate, Tiffany, Vol. 1, page 734.

The plain deduction from this language is that, in order to effectuate the extinguishment of an easement by unity of title, the fee to the dominant and servient tenements must be vested in the same person at the same time.

2. Was the easement here involved extinguished by the conveyance of the servient tenement to one who had no notice of the easement?

The answer to this question involves the consideration of the doctrine of estoppel. It appears from statements contained in the transcript of record that, when Bellamy conveyed the servient tenement to Beaufort Bank, the deed of conveyance contained no reference to the easement; and when Thomas, receiver of the Beaufort Bank, conveyed the same property to this defendant, his deed likewise made no reference to the easement. From these premises it is con-

tended that Bellamy, who reacquired the title to the dominant estate, was estopped to assert the existence of the easement, and the plaintiff, as his successor in title, is now so estopped.

Estoppel arises when one by his action, or his failure to act, or by his speaking, or his failure to speak, has caused one to change his position to his hurt, and it would be inequitable to permit the other to assert a position or set up a claim antagonistic to the one who claims the estoppel. In order, however, that one may enforce an estoppel against another, he must show that he was misled to his injury by the action or the nonaction, or the language or the silence of that other. It is not enough that he might have been so misled, he must actually have been misled. Nor can one avail himself of the rule of estoppel if his own negligence to avail himself of information, the sources of which were in his reach, has brought about the situation of which he complains. In this present case there is an absence of proof that the defendant was misled by the fact that no reference was made of the easement in the deed of Bellamy to the bank, and that of Thomas, receiver, to appellant, of the existence of the easement. But these deeds gave her notice that the origin of the title to her lot was in Bellamy and Little. The deed from Little to Bellamy of his interest in the servivent tenement which deed was on record, gave express notice of the existence of the easement. The deed from Bellamy and Little to Culuris, which created the easement, was also on record. The rule of the law that an easement may be extinguished by the conveyance of the servient estate without notice to the purchaser, of the easement, carries with it the idea that there has been an intentional concealment or deception which imposed upon the purchaser. No such thing is shown here. Moreover, the right-of-way was in open and notorious use; the slightest inquiry on the part of defendant would have apprised her of its nature, its extent, and that it was appurtenant to the property which she was buying and to which it was immediately adjacent.

. We do not think the easement was extinguished by merger of title nor by the failure to refer in the deed of Bellamy to the bank and that of Thomas, receiver, to the defendant to the existence of the easement.

It is elaborately and forcefully argued that, where one whose title is defective has conveyed and warranted it, a good title later acquired by him passes to his grantee by the warranty. There is no denial of this just rule of the law. We think it has no application here. There is no defect in the title to the servient estate. Defendant received exactly what Bellamy had and that which he received under the deed from Little to him, which expressly stated that the right-of-way remained intact.

The issue stated in the second question propounded in the appellant's brief is aimed at the statement in the circuit decree that the easement which is of a notorious character involved the use of the strip in question as a *quasi*-public right-of-way for ingress and egress to a moving picture theater, etc.

The attack seems the refinement of criticism. If the language used was erroneous, it is harmless. The prayer for relief by injunction is not predicated alone upon the ground that the obstruction of the alleyway by defendant obstructed the use of it by patrons of the moving picture theater. Paragraph 5 of the complaint is to this effect: "That the purpose of said easement was to permit ingress and egress from Bay Street to the business buildings on the rear of the lot conveyed by Bellamy and Little to Chris Culuris, and access from the rear of that portion of the property fronting south on Bay Street, all of which was and is of great value to said dominant estate."

Paragraph 6 declares that the business conducted in the building on the rear or northern side of said lot is a motion and talking picture theater, access to which can only be had through the right-of-way.

Paragraph 7 of the complaint is to the effect: "That prior to this action the defendant built upon the four-foot easement, a right-of-way, a fence materially constricting the width of the said right-of-way and obstructing the use thereof and rendering the same less valuable to plaintiff and his tenants as a way of ingress and egress, and constructing in said fence two large gates opening out and upon plaintiff's adjacent property."

Nowhere is found authority for the assumption that no other personal or business interests were served by the use of the alleyway than that of the patrons of the theater. If the patrons were prevented from reaching the theater, the interests of the owners of the theater were necessarily injured. The deed granting the easement expressly provided that the alley shall be "kept free and clear of any obstacles to its free use as a way for the use of the occupants of the property on both sides thereof." Plaintiff is one of such occupants.

The third and last question suggested by appellant's brief is this: "Do the pleadings and facts as agreed on entitle plaintiff to relief by injunction, or is his remedy by an action at law for damages?"

We are frank to say that, if this issue had been opportunely made, it would have merited consideration.

We think the general practice is to bring such suits on the law side of the Court in an action for damages. If damages be found, the Court issues its order to carry out such finding. But we know of no rule which prevents a litigant from waiving the suit in the law Court; and that is what appellant has done. This question was not raised by demurrer or answer, and was never presented to or passed upon by the Circuit Court. On the contrary, defendant consented that the matter should be heard by the Circuit Judge at chambers, on an agreed statement of facts. The objection comes too late.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE BLEASE, and MESSRS. JUSTICES STABLER and CARTER and MR. W. C. COTHRAN, ACTING ASSOCIATE JUSTICE, concur.