## FIRST-CITIZENS BANK & TRUST COMPANY v. NEW AMSTERDAM CASUALTY COMPANY.

(Filed 29 April, 1953.)

**1. Principal and Surety § 8—**

　　A person lending money to the owner of land for the construction of houses thereon may not sue the surety on the bond executed by such owner as "principal" to a third person as "owner," since the lender is not a party to such contract.

**2. Estoppel § 5—**

　　As a general rule, a party cannot claim the benefit of the doctrine of estoppel *in pais* if his own failure to avail himself of information within his reach brings about the situation of which he complains.

**3. Same—**

　　As a general rule, a party may not claim the benefit of an estoppel *in pais* unless he relies upon the truth of the alleged misrepresentations not only at the time they were made but also at the time he acts upon them.

**4. Principal and Surety § 8—Complaint held insufficient to invoke estoppel in pais to preclude surety from denying liability on bond.**

　　The owner, in order to finance the construction of houses on the land, executed to the bank his promissory note secured by a deed of trust, and, in order to obtain a contractor's surety bond demanded by the bank, executed a contractor's surety bond, in which he was denominated the principal contractor and a third person, who had no interest in the land or the project of building houses thereon, was denominated "owner." The bond was delivered to the bank with the note and deed of trust. Upon the insolvency of the owner and the denial of liability by the surety, the bank had the houses completed at a stipulated cost for labor and material, and sought to hold the surety liable upon the doctrine of estoppel *in pais* on the ground that the surety knew or by reasonable diligence could have ascertained the true facts. *Held:* The surety's demurrer to the complaint was properly sustained since the bank had the bond and could itself have ascertained the facts, and further its expenditures in completing the houses were made after it had actual knowledge of the terms of the bond. Further, the bank could obtain no right by subrogation against the surety, since the surety was not liable for the obligation discharged by the bank.

**5. Subrogation § 1—**

　　The party paying certain obligations cannot obtain a right of subrogation against a party not liable for such obligations.

APPEAL by plaintiff from *Burney, J.,* at March Term, 1953, of WAKE.

Civil action heard upon a demurrer to a complaint invoking the doctrine of estoppel *in pais.*

For convenience of statement, K. R. Benfield and W. A. Harris are called by their respective surnames; the First-Citizens Bank & Trust

Company is characterized as the plaintiff; and the New Amsterdam Casualty Company is designated as the defendant.

The plaintiff prays judgment against the defendant for $16,215.35 upon a complaint making these averments:

1. Benfield and his wife owned land on the Hickory and Pecan Roads in or near the City of Raleigh. This land is hereafter referred to as the Hickory and Pecan Road tract.

2. On 1 August, 1950, the plaintiff and Benfield made a contract whereby plaintiff agreed to loan Benfield $70,000.00 on his promissory note, and whereby Benfield bound himself to secure the payment of his note by a first deed of trust on the Hickory and Pecan Road tract, to build upon the Hickory and Pecan Road Tract 14 houses conforming to Federal Housing Authority plans and specifications at a total cost of $70,000.00, and to give plaintiff, as obligee, a bond in the sum of $70,-000.00 with surety conditioned on his performing his construction agreement, and paying all persons furnishing labor or materials in connection with it.

3. Subsequent to this event, Benfield, as "contractor," and Harris, as "builder," signed and sealed a paper writing dated 15 August, 1950, which recited that Benfield thereby contracted to build for Harris upon the Hickory and Pecan Road tract 14 houses conforming to Federal Housing Authority plans and specifications and costing a total of $70,000.00. The defendant procured this paper writing from Benfield and Harris, and retained it. In consequence, the plaintiff had no knowledge of its existence until after the institution of this action.

4. On 16 August, 1950, Benfield, as "principal," and defendant, as "surety," executed to Harris, "as owner," a bond in the sum of $70,000.00, which contained this recital: "Principal has executed contract with Owner, dated August 15, 1950, for construction of 14 houses on Hickory Road and Pecan Road for $5,000.00 each, to be built according to F. H. A. specifications." The condition of the bond was as follows: "If Principal shall faithfully perform such contract and pay all persons who have furnished labor or material for use in or about the improvement and shall indemnify and save harmless the Owner from all cost and damage by reason of Principal's default or failure to do so, then this obligation shall be null and void; otherwise it shall remain in full force and effect." The bond stipulated that "all persons who have furnished labor or material for use in or about the improvement shall have a direct right of action under the bond, subject to the Owner's priority." The defendant was paid a premium of $700.00 for executing the bond as surety.

5. The defendant knew or by the exercise of reasonable diligence could have ascertained that Benfield and his wife held title to the Hickory and Pecan Road property; that Benfield alone proposed to erect houses upon

such tract; and that Harris had no interest in either the land or the project of building houses upon it. Moreover, the defendant knew that the plaintiff had made the procurement of a performance bond in the form specified in paragraph 2 a prerequisite to making the loan to Benfield, and that "the plaintiff would rely upon such bond in making said loan." Notwithstanding its knowledge in these particulars, the defendant executed the bond described in paragraph 4 and permitted Benfield to deliver it to the plaintiff without attaching to it "a copy of the purported contract between . . . Benfield and . . . Harris and without giving the plaintiff . . . any notice . . . that said bond was not in all respects genuine, regular, and in form which could be relied upon by the bank."

6. On 17 August, 1950, Benfield delivered these documents to the plaintiff: (1) His promissory note for $70,000.00; (2) a first deed of trust conveying the Hickory and Pecan Road tract to a trustee as security for the payment of the note; and (3) the bond described in paragraph 4. When these instruments were delivered to it by Benfield, the plaintiff did not read the bond. It merely examined the defendant's signature thereon, and in that way satisfied itself that the defendant had executed the bond. The plaintiff thereupon accepted and retained the note, deed of trust, and bond, and transferred the sum of $70,000.00 to Benfield as the proceeds of the loan evidenced by the note and secured by the deed of trust. In pursuing this course, the plaintiff assumed that the bond was in the form specified in paragraph 2.

7. Subsequent to these events, Benfield embarked upon the task of erecting the houses on the Hickory and Pecan Road tract. While so engaged, Benfield became insolvent. In consequence, Benfield was unable to finish the 14 houses, which were in various stages of construction.

8. The plaintiff insisted that the defendant was obligated by its bond to complete the houses, and made demand on the defendant accordingly. The defendant rejected the demand, denied any obligation on its part to complete the houses, and called the plaintiff's attention to the terms of the bond. The plaintiff then ascertained for the first time the terms of the bond.

9. The plaintiff thereupon caused the 14 houses to be completed "for its own protection" and with "a view of minimizing losses to all concerned." In so doing, the plaintiff paid five persons sums totaling $34,425.76 "for labor and material furnished in the completion of said houses, . . . and obtained from each an assignment of his claim." The plaintiff kept the defendant constantly advised of these activities and its intent to demand reimbursement from defendant for its outlays in connection with them.

10. Upon the completion of the houses, the Hickory and Pecan Road property was sold, and the proceeds of its sale was applied to Benfield's

note and to the outlays made by plaintiff subsequent to defendant's denial of liability. The proceeds of the sale fell $16,215.35 short of the amount required to satisfy these items. The defendant has spurned repeated demands of plaintiff for payment of this shortage.

11. The defendant is estopped by its conduct to deny liability to plaintiff for the $16,215.35.

The defendant demurred in writing on the ground that the complaint does not state facts sufficient to constitute a cause of action in favor of plaintiff against defendant. Judge Burney sustained the demurrer, and the plaintiff appealed.

*Mordecai & Mills for plaintiff, appellant.*
*Bickett & Banks for defendant, appellee.*

ERVIN, J. The bond described in paragraph 4 of the statement of facts is apparently the identical bond which was in suit in *Builders Corp. v. Casualty Co.,* 236 N.C. 513, 73 S.E. 2d 155.

This case is simplified if due heed is paid to the significant fact that Benfield had two separate contracts, one with the plaintiff and the other with Harris. The defendant was not a party to either contract. The only obligation of a contractual nature assumed by the defendant was that involved in the contract of suretyship incorporated in the bond. The defendant undertook by his contract of suretyship to perform Benfield's contractual obligation to Harris in the event Benfield failed to perform it. *Casualty Co. v. Waller,* 233 N.C. 536, 64 S.E. 2d 826.

The plaintiff has no right to sue the defendant upon the contract of suretyship embodied in the bond for the very simple reason that the plaintiff was not a party to such contract.

This brings us to the question whether the complaint makes out a case for the plaintiff under the doctrine of estoppel *in pais. Long v. Trantham,* 226 N.C. 510, 39 S.E. 2d 384; *Self Help Corp. v. Brinkley,* 215 N.C. 615, 2 S.E. 2d 889; *Scott v. Bryan,* 210 N.C. 478, 187 S.E. 756; *Upton v. Ferebee,* 178 N.C. 194, 100 S.E. 310.

We are constrained to hold that this question must be answered adversely to plaintiff even if we accept as valid the somewhat dubious theory that the conduct of the defendant as set out in the complaint was tantamount to a representation by the defendant that the bond obligated the defendant to perform Benfield's construction agreement with the plaintiff in the event Benfield failed to perform it.

The complaint discloses that the bond was presented to the plaintiff before the loan was made; that in consequence the plaintiff had a full opportunity to read the bond, and ascertain its terms before the loan was made; and that the plaintiff nevertheless accepted and retained the bond

and made the loan without reading the bond. This brings the case within the rule that one cannot claim the benefit of the doctrine of estoppel *in pais* if his own failure to avail himself of information within his reach brings about the situation of which he complains. *Ricks v. Mc-Pherson,* 178 N.C. 154, 100 S.E. 330; *Hull v. Commissioner of Internal Revenue,* 87 F. 2d 260; *Haselden v. Schein,* 167 S.C. 534, 166 S.E. 634; 31 C.J.S., Estoppel, section 71. It is to be noted, moreover, that the plaintiff had actual knowledge of the exact terms of the bond before it employed the five persons mentioned in paragraph 9 of the statement of facts to complete the houses. "The truth respecting the representations must be unknown to the party claiming the benefit of the estoppel, not only at the time they were made but at the time they were acted on by him." *Self Help Corp. v. Brinkley, supra.*

The allegations of the complaint that the plaintiff paid the five persons sums aggregating $34,425.76 "for labor and material furnished in the completion of the houses, . . . and obtained from each an assignment of his claim" do not reveal any right on the part of the plaintiff to recover any part of such sums from the defendant by way of either conventional or legal subrogation.

These obligations were not incurred by the defendant or any person acting under the bond. The plaintiff engaged these five persons to complete the houses for its own benefit after the defendant had disclaimed any obligation to plaintiff to perform such work, and after the plaintiff had learned the exact terms of the bond. The plaintiff could not obtain a right of subrogation against the defendant by paying debts for which the defendant was not liable at all. *Publishing Co. v. Barber,* 165 N.C. 478, 81 S.E. 694; 60 C.J., Subrogation, section 25.

The judgment sustaining the demurrer is
Affirmed.