Lee C. SMITH and wife, Adele H. Smith, et al., Plaintiffs,

v.

HBE CORPORATION, Defendant.

No. 85–662–CIV–5.

United States District Court, E.D. North Carolina, Raleigh Division.

April 18, 1986.

---

Michael E. Weddington, James G. Billings, James K. Dorsett, III, Smith,

Anderson, Blount, Dorsett, Mitchell & Jernigan, Raleigh, N.C., for plaintiffs.

Charles C. Meeker, Cynthia Leigh Wittmer, Sanford, Adams, McCullough & Beard, Raleigh, N.C., William A. Richter, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for defendant.

## ORDER

JAMES C. FOX, District Judge.

### STATEMENT OF THE CASE

Plaintiffs instituted this action for declaratory relief pursuant to N.C.Gen.Stat. § 1–253, *et seq.*, by filing a verified complaint in the Superior Court of Wake County, North Carolina, on March 29, 1985. On April 26, 1985, the defendant filed with this court a verified petition for removal and supporting papers stating that the action was removable pursuant to 28 U.S.C. § 1441 and that "[t]his court has original jurisdiction of this cause pursuant to 28 U.S.C. § 1332." On April 26, 1985, plaintiffs filed a motion to remand the action to the Superior Court of Wake County, North Carolina. The defendant filed an answer to the complaint with this court on May 15, 1985. By order dated September 3, 1985, plaintiffs' motion to remand was denied.

Thereafter, on October 9, 1985, an order was entered providing that no time would be allowed for discovery on the ground that there was no basis for a discovery period. Such order also provided that all motions of the parties should be filed with the court within forty-five (45) days from the date of the order. By consent order, this period was extended to December 9, 1985.

This matter is presently before the court on the parties' cross-motions for summary judgment made pursuant to Rule 56 of the Federal Rules of Civil Procedure. The motions have been briefed thoroughly, and on January 8, 1986, the court heard oral argument thereon. Accordingly, this matter is now ripe for disposition.

### STATEMENT OF FACTS

The undisputed facts appear to be as follows:

The fifteen individual plaintiffs are residents of the State of North Carolina and the corporate plaintiff, Wachovia Bank and Trust Company, N.A., is a national banking association headquartered in Winston-Salem, North Carolina. The defendant HBE Corporation ("HBE") is a Delaware corporation which is headquartered in Missouri.

On December 5, 1983, the Fairfax Corporation ("Fairfax"), a subsidiary of the Cameron-Brown Company ("Cameron-Brown"), entered into certain agreements with plaintiffs relating to real property known as the Cameron-Brown Building ("C–B property"), located in Charlotte, North Carolina. Under these agreements, Fairfax sold the C–B property to plaintiffs, and gave plaintiffs an easement over an adjoining tract of land used for parking. Also, on December 5, 1973, plaintiffs entered into a Lease Agreement ("Lease"), whereby plaintiffs leased the C–B property back to Fairfax for a period of twenty-five (25) years. The agreements contemplated a return of possession of the property to plaintiffs on December 5, 1998, the end of the lease term. During the period from December 5, 1973, to June 27, 1984, the relationship between Fairfax and plaintiffs remained unchanged; Fairfax was the lessee of the property, and plaintiffs were the lessors thereof.

On June 27, 1984, the relations among the parties in connection with the C–B property changed drastically. What previously had been a mere twenty-five year lease of the C–B property from plaintiffs to Fairfax was changed to a five year lease of the property to HBE, an irrevocable and binding agreement by plaintiffs to sell the property at the end of the lease term to a third party, and an option to purchase the property from the third party by HBE. This new transaction was effected through several agreements executed on June 27, 1984. Three of the agreements are important to the matter presently before the court.

First, on June 27, 1984, plaintiffs and defendant HBE entered into an agreement entitled "Consent to Transfer and Lease Modification Agreement" ("Lease Modification"). Under the Lease Modification, Fair-

fax, with the consent of plaintiffs, sold and assigned its interests and responsibilities under the lease to HBE, permitting HBE to become the tenant under the 1973 lease as substitute lessee. Plaintiffs then leased the property to HBE under the same terms it had leased the property to Fairfax. The term of the lease, however, was reduced so that it terminates on January 3, 1989 (rather than the original date December 5, 1998).

Second, on June 27, 1984, the plaintiffs entered into an Agreement of Purchase and Sale ("Purchase Agreement"), whereby plaintiffs agreed to sell the C–B Building to Cameron-Brown and First Union Corporation (hereinafter collectively referred to as "Cameron-Brown") on January 3, 1989, for a purchase price of $13,000,000, in addition to the then outstanding balance on the mortgage of approximately $3,265,000. Pending closing, plaintiffs transferred legal title to the property to a separate trustee.

Finally on June 27, 1984, HBE and Cameron-Brown entered into an agreement entitled "Option for the Purchase and Sale of Real Estate" ("Option to Purchase"), pursuant to which HBE acquired an option to purchase the C–B Building from Cameron-Brown. HBE has the right to exercise this option at any time.

Sometime after June 27, 1984, HBE received advice from its tax advisors that as owners of the leasehold interest, with an option to purchase the property, HBE might, upon exercise of the option, be deemed owner of the property for purposes of federal taxation. A written opinion of HBE's accountants concluded that, "the Internal Revenue Service could contend that the position of the parties was so changed by a series of agreements related to the office building that the ownership for tax purposes has also shifted." In September, 1984, HBE informed plaintiffs of its tax advisors' conclusion with regard to the June 27, 1984, agreements and of its intention to seek a Private Letter Ruling from the Internal Revenue Service ("IRS") regarding the "tax ownership" of the C–B property.

Plaintiffs brought this action against HBE in response to its plans to obtain a ruling from the IRS regarding tax ownership. Plaintiffs seek a declaratory judgment (1) to uphold the validity of the lease agreements by declaring the rights and remedies of plaintiffs as owners and landlords of the C–B property, and by declaring the duties and obligations of HBE as tenant and lessee of the property; (2) to uphold the validity of the contract between plaintiffs and Cameron-Brown for the future sale of the C–B property, and (3) to declare that no present sale of the property has occurred.

## DISCUSSION

The law of North Carolina, including the Declaratory Judgment Act, N.C.Gen.Stat. §§ 1–253–267, is determinative in this action. *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). The purpose of the North Carolina Declaratory Judgment Act is to "settle and afford relief from uncertainty concerning rights, status, and other legal regulations" between parties. *North Carolina Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 446, 206 S.E.2d 178, 186 (1974).

The court has jurisdiction to render a declaratory judgment where:

[I]t appears from the allegations of the complaint ... (1) that a real controversy exists between or among the parties to the action; (2) that such controversy arises out of opposing contentions of the parties, made in good faith, as to the validity or construction of a deed, will or contract in writing ...; and, (3) that the parties to the action have or may have legal rights, or are or may be under legal liabilities which are involved in the controversy, and may be determined by a judgment or decree in the action....

*Carolina Power and Light Co. v. Iseley*, 203 N.C. 811, 820, 167 S.E. 56, 60 (1933). "When jurisdiction exists, a contract may be construed either before or after there has been a breach of it." *Nationwide Mutual Ins. Co. v. Roberts*, 261 N.C. 285, 287, 134 S.E.2d 654, 657 (1964). The North

Carolina Supreme Court has confirmed that:

> The Act recognizes the need of society "for officially stabilizing legal relations by adjudicating disputes before they ripen into violence and destruction of the status quo."

*Lide v. Mears*, 231 N.C. 111, 117–18, 56 S.E.2d 404, 409 (1949) (citation omitted). For the court to enter a declaratory judgment, it must appear that, in the absence of a declaration of rights, litigation between the parties is inevitable. *North Carolina Consumers Power, Inc., supra; Pilot Title Ins. Co. v. Northwestern Bank*, 11 N.C. App. 444, 181 S.E.2d 799, 802–03 (1971).

The Declaratory Judgment Act is particularly appropriate for determining the rights and status of parties with respect to real property. *Hubbard v. Josey*, 267 N.C. 651, 148 S.E.2d 638 (1966); *Charlotte Park & Recreation Commission v. Barringer*, 242 N.C. 311, 88 S.E.2d 114 (1955), *cert. denied, sub. nom. Leeper v. Charlotte Park & Recreation Commission*, 350 U.S. 983, 76 S.Ct. 469, 100 L.Ed. 851 (1956); *York v. Newman*, 2 N.C.App. 484, 163 S.E.2d 282 (1968). Further, a declaratory judgment "is appropriate for the determination of the validity or construction and operation of a lease." 26 C.J.S. "Declaratory Judgment," § 74.

Summary judgment is appropriate in a declaratory judgment action when there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. *Blades v. City of Raleigh*, 280 N.C. 531, 187 S.E.2d 35, 43 (1972); *Threatte v. Threatte*, 59 N.C.App. 292, 296 S.E.2d 521 (1982), *aff'd*, 308 N.C. 384, 302 S.E.2d 226 (1983). The propriety of summary judgment in a declaratory judgment action is governed by the same considerations applicable to any other action and therefore may be entered when there is no issue of material fact and a party is entitled to prevail as a matter of law. *Blades v. City of Raleigh, supra;* Fed.Rules Civ. Pro. 56, 57. Summary judgment is therefore appropriate in this action, in that the material facts are not in controversy.

The plaintiffs assert that in adjudicating the rights and obligations of the parties in the summary judgment motions, the court must consider the following issues:

1. Are the plaintiffs entitled to a declaratory judgment that the Lease Modification and Lease constitute a valid and enforceable leasehold agreement between plaintiffs and defendant under which plaintiffs are the owners and landlords of the C–B Building and the defendant is the tenant of this property obligated to pay the specified rent for the term of the lease?

2. Are the plaintiffs entitled to a declaratory judgment that the Purchase Agreement is a valid and enforceable contract for a future sale of the C–B Building by plaintiffs to Cameron-Brown?

3. Are the plaintiffs entitled to a declaratory judgment that any action by defendant which seeks to treat or characterize its monthly payments to plaintiffs as installment payments upon a purchase rather than as rent, or to treat or characterize the agreements as constituting an "installment sale" rather than a valid leasehold agreement, or to deny the right of plaintiffs as owners and landlords to continue to depreciate the C–B Building during the term of the Lease will constitute a breach of defendant's contractual duties and obligations under the Lease and Lease Modification, will constitute a violation of N.C.Gen.Stat. § 75–1.1, and will be grounds for plaintiffs to eject defendant as tenant and lessee of the property?

■ To the extent that plaintiffs seek to have this court declare that under North Carolina real property law plaintiffs are landlords, and HBE is tenant, or to declare that the parties are bound by the rights and obligations as set forth in the lease agreements, a declaratory judgment is not proper, as there is no real dispute or concomitant imminent litigation as to the parties' respective interests in the property under state law. HBE does not contend that its interests under state law regarding the C–B property are any different from those set forth in the agreements between the parties. Both parties concede that un-

der the lease agreements the plaintiffs are the landlords of the C–B property and HBE is the tenant pursuant to North Carolina real property law.

■ As to the second issue set forth above, there is also no dispute. Both parties agree that the contract is a valid contract for the future sale of the C–B property. Absent a dispute as to such contract's validity, a declaratory judgment declaring the contract's validity would serve no purpose.

■ To the extent that plaintiffs seek to have this court declare that any attempt by HBE to ascertain its status as tax owner of the C–B property or assert such for federal income tax purposes constitutes a breach of the lease agreements entitling plaintiffs to eject HBE from said property, there appears to be a real dispute which is properly the subject of a declaratory judgment action. Plaintiffs assert that *any* attempt by HBE to claim tax ownership of the C–B property, whether by applying for a private letter ruling from the IRS or by asserting such on its federal income tax returns, constitutes a breach by HBE of the lease agreements. It is HBE's position that after it exercises the option to purchase the C–B property its relationship with regard to such property *may* change in such a way that it becomes, in the eyes of the IRS, the tax owner of such property. Therefore, HBE would like to know the tax consequences of exercising the option to purchase. HBE also asserts that it believes that it already has exercised the option to purchase the C–B property and is going to assert on its federal income tax return that it is the tax owner. As a result, it appears that a real dispute exists in this regard. Therefore, the court will address the narrow issue of whether HBE will breach the lease agreements by, or is estopped from, ascertaining, from the IRS, the tax ownership of the C–B property or asserting tax ownership of such property to the IRS.

■ Plaintiffs argue that they are the owners of the C–B property and HBE is merely the tenant thereof. Plaintiffs contend, therefore, that any action HBE takes which is inconsistent with the status of

tenant is a breach of the lease agreements. Essentially, in taking this position, plaintiffs rely on: (1) the fact that plaintiffs are referred to as landlords and owners of the C–B property and HBE as tenants in the various agreements; (2) the obligations and limitations imposed upon HBE show it to be the tenant of the property; (3) the contingencies of the Purchase Agreement and Option to Purchase reveal that HBE may never in fact purchase the property; (4) plaintiffs' past practices indicate that they are the owners of the property. The arguments plaintiffs put forth, however, do not constitute an express or implicit limitation upon the ability of HBE to assert its entitlement to a certain tax treatment, or the ability of HBE to seek a letter ruling from the IRS. Rather, plaintiffs' arguments are directed toward the determination of whether the transaction in question, taken as a whole, constitutes a sale or a lease for federal tax purposes—a question not before this court.

It is clear that the agreements relating to the property do not contain an express prohibition against attempts by HBE to assert or ascertain its proper tax status in relation to the C–B property, nor do plaintiffs so contend. In addition, the agreements do not delineate who is deemed the owner of the property for federal income tax purposes. Nothing is expressed regarding the parties' desires or understanding as to tax treatment. There are no provisions in the agreements which purport to prohibit HBE from seeking a letter ruling from the IRS or from claiming deductions on its federal income tax returns based upon its ownership of the property for federal income tax purposes. Indeed, plaintiffs, in their reply brief, admit that "[t]he leasehold agreements do not make any allocation of tax benefits because there was no basis or reason for any such allocation." Simply put, the lease agreements, per se, do not provide a basis for a declaration by this court that any action by HBE to ascertain or assert tax ownership of the C–B property constitutes a breach by HBE of such agreements.

Plaintiffs alternatively argue that HBE should be estopped from asserting to the IRS that it is the tax owner of the C–B property. As the North Carolina Supreme Court set forth in *Hawkins v. M & J Finance Corp.*, 238 N.C. 174, 77 S.E.2d 669 (1953), the essential elements of an equitable estoppel as related to the party estopped are:

> (1) Conduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party ...; [and] (3) knowledge, actual or constructive, of the real facts.

*Hawkins*, 77 S.E.2d at 672. As recently summarized, equitable estoppel "arises when an individual by his acts, representation, admissions, or by his silence when he has a duty to speak, intentionally or through culpable negligence, induces another to believe that certain facts exist, and such other person rightfully relies and acts upon such belief to his detriment." *Thompson v. Soles*, 299 N.C. 484, 263 S.E.2d 599, 602 (1980) (citations omitted). Consequently, in order for plaintiffs to be able to assert the defense of equitable estoppel, they must show that HBE intentionally or through culpable negligence acted inconsistently with its present position and they rightfully relied thereon to their detriment.

In taking the position that HBE's present position is inconsistent with its conduct at the time the lease agreements were executed, plaintiffs rely on *Wolfe v. North Carolina Joint Stock Land Bank*, 219 N.C. 313, 13 S.E.2d 533 (1941). In *Wolfe*, the plaintiff defaulted on a deed of trust on his land, and the defendant Bank repurchased the property and then entered into a lease agreement with the plaintiff. The lease agreement provided that "[the Bank] is seized of the legal title to the lands described in this contract and ... [the plaintiff] has no interest in the farm except for the term and duration of this lease." 219 N.C. at 315, 13 S.E.2d 533. The plaintiff later sought to establish a parol trust agreement whereby the defendant was holding the title to the property for the benefit of the plaintiff. The North Carolina Supreme Court ruled that the plaintiff was estopped from asserting equitable title by virtue of conduct such as failing to defend ejectment proceedings and by virtue of the fact that he had "stipulat[ed] in the contract that he claimed no interest in the land other than as tenant." 219 N.C. at 317, 13 S.E.2d 533. The court held that:

> The language of this agreement is clear and explicit. A reading of it manifests the clear intention of the plaintiffs to recognize the defendants as the landlords, and assume for themselves the role of tenants. * * * The execution of this agreement is conduct positive, unequivocal and inconsistent with the claim of title under the alleged parol agreement.

219 N.C. at 318, 13 S.E.2d 533 (quoting *Hare v. Weil*, 213 N.C. 484, 196 S.E. 869, 872 (1938)).

In the instant case, plaintiffs contend that HBE stipulated in the Lease Modification Agreement, which it signed, that it acquired no interest in the property other than as tenant and that plaintiffs have retained all beneficial rights of ownership. Therefore, plaintiffs argue, defendant is "estopped from asserting any ownership interests in the property."[1]

---

1. HBE contends that nowhere did it stipulate that plaintiffs retained all beneficial interest in the property. Rather, HBE contends that, by way of preliminary recital, plaintiffs stated in the Lease Modification that plaintiffs transferred legal title to Wachovia Bank, but that vis-a-vis the Bank, they retained all beneficial interest. Indeed, by entering into the lease agreements, plaintiffs relinquished to HBE some of the beneficial interests which they retained with respect to the Bank. Therefore, HBE argues that the preliminary recital does not amount to a stipulation by it that plaintiffs retained all beneficial rights of ownership in the C–B property. However, HBE agrees that "its status as tenant under the Lease does not vest it with any ownership rights in the property other than as tenant under the Lease." Therefore any dispute is not a material one such that summary judgment would be inappropriate in this case.

*Wolfe* does not support an equitable estoppel in the instant case since there the plaintiff, the party estopped, was asserting ownership of the property under state law even though he had taken steps to disclaim such legal ownership. In the present instance, HBE does not attempt to assert that its interests under state law are different from those as set forth in the relevant agreements. Nor does HBE claim that by virtue of the Lease it acquired an ownership interest other than as tenant. It is HBE's contention that even though plaintiffs retain record ownership until 1989, sufficient burdens and benefits of ownership *may* have transferred to HBE from the transaction as a whole, so that, upon HBE's exercise of its option to purchase the property, the IRS could determine, *for federal income tax purposes*, that HBE is the owner. As a result, HBE argues, neither the recital by it that under the lease it has no ownership interest other than as tenant nor any other provision of the lease agreements, is inconsistent with its present position. The court agrees.

 That the Lease is so denominated, that the parties are referred to therein as landlord and tenant, and that the payments thereunder are called rent, are not inconsistent with the position that HBE now seeks to assert. A taxpayer who holds legal title to property under state law is not necessarily the owner of such property for federal income tax purposes, and the labels applied by the parties to a transaction are not determinative of the issue. *Frank Lyon Co. v. United States*, 435 U.S. 561, 98 S.Ct. 1291, 55 L.Ed.2d 550 (1978); *Sun Oil Co. v. C.I.R.*, 562 F.2d 258, 263 (3d Cir.1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *Mathews v. Commissioner*, 520 F.2d 323, 325 (5th Cir.1975), *reh'g denied*, 524 F.2d 240 (5th Cir.1975), *cert. denied*, 424 U.S. 967, 96 S.Ct. 1463, 47 L.Ed.2d 734 (1976); *William T. Hunter v. Commissioner*, ¶ 82, 126 T.C.M. (P–H) (1982). The question of when a sale is complete for federal income tax purposes depends upon all of the facts and circumstances of the transaction, and no single fact is controlling. *Baird v. Commissioner*, 68 T.C. 115, 124 (1977). When examining the fact and circumstances surrounding the transaction, the focus is on which party to the transaction possesses the burdens and benefits of property ownership. *Grodt & McKay Realty, Inc. v. Commissioner*, 77 T.C. 1221, 1237–38 (1981); *Baird*, 68 T.C. at 124 (citing *Merrill v. Commissioner*, 40 T.C. 66 (1963), *aff'd*, *per curiam*, 336 F.2d 771 (9th Cir.1964)). Therefore the question of which parties to a real estate transaction are owners for federal income tax purposes is decided by the economic realities of the transaction as a whole, not by the labels, the form of the agreement, the parties' intentions, or who has title under state law. *Gregory v. Helvering*, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935).

The long and short of the foregoing discussion is that the most that can be said concerning the transaction entered into on June 27, 1984, is that the proper tax treatment of such transaction is an open question; one which poses arguments on both sides. As the North Carolina Supreme Court noted in *Stevens v. Turlington*, 186 N.C. 191, 119 S.E. 210, 213 (1923): "It may be well to note that the evidence ... of an equitable estoppel by matter in pais, must be 'positive, unequivocal, and inconsistent with the contract.'" *Id.* (citations omitted). Since the IRS could well determine that, considering the transaction taken as a whole, HBE is the tax owner of the C–B property, it would not be inconsistent with HBE's signing of the lease agreements for it to assert or ascertain such status. For this reason, plaintiffs have failed to show that HBE intentionally or through culpable negligence acted inconsistently with its present position and therefore it would not be in accordance with the principles of equitable estoppel to hold that HBE is now estopped to assert its position.

In addition, in showing that HBE's present position is inconsistent with its previous position, plaintiffs must also demonstrate a "lack of knowledge and the means of knowledge of the truth as to the fact in question" in order to avail themselves of the equitable estoppel defense. *Hawkins*, 77 S.E.2d at 672. "[H]e who claims the

benefit of an equitable estoppel on the ground that he has been misled by the representations of another must not have been misled through his own want of reasonable care and circumspection." *Id.* at 673; *First Citizens Bank & Trust Co. v. New Amsterdam Cas. Co.,* 237 N.C. 591, 75 S.E.2d 651, 653–54 (1953).

In this instance, the plaintiffs were the primary drafters of the documents in question. They had the ability to review the documents and evaluate the probable income tax consequences as easily as HBE. If assuring their ability to claim ownership on their federal income tax returns was of primary importance, plaintiffs had the ability to negotiate terms which, from the standpoint of the economic realities, would more readily assure their ability to successfully claim ownership on such returns. If upon exercise of the option it is ultimately decided that the federal income tax consequence is that HBE, and not plaintiffs, is the owner for federal income tax purposes, it will be through plaintiffs' own decisions in negotiating the terms of the transaction as a whole that such a result ensues. For this reason, in addition to the one previously discussed, it would not be in accordance with the principles of equitable estoppel to hold that HBE is now estopped to assert its position.

Finally, HBE should not be estopped from asserting to the proper taxing authorities that it is the owner of the property for federal income tax purposes because it would not be equitable, if HBE turns out in fact to be the tax owner, to deprive the tax owner of the right to claim its tax ownership. As the court noted in *Hawkins, supra:* "The doctrine of estoppel by conduct—estoppel in pais—rests upon principles of equity. It is designed to aid the law in the administration of justice when without its aid injustice would result." 77 S.E.2d at 672; *see also, Thompson v. Soles,* 263 S.E.2d at 602.

As discussed *supra,* the answer to the question of who is the owner of the property for federal income tax purposes turns upon the economic realities of the transaction as a whole. When examined under the proper standards for determination of the federal tax issue, it becomes apparent that upon exercise of the option by HBE, plaintiffs, possibly, may not be entitled to claim ownership of the C–B property for federal income tax purposes. Essentially plaintiffs are asking the court to declare that HBE may never assert before the proper taxing authorities that it is the owner of the property for federal income tax purposes, even though the taxing authorities, if presented with the question, might will decide that HBE is, in fact, the tax owner and that plaintiffs are not.

In *Herring v. Volume Merchandise, Inc.,* 252 N.C. 450, 113 S.E.2d 814 (1960), the North Carolina Supreme Court denied plaintiffs use of the claim of equitable estoppel where they sought its use to obtain a right to which they were not entitled. In *Herring,* plaintiffs/lessors, claimed that an agent for the defendants/lessee orally agreed to terminate a longterm lease with the plaintiffs. The agreement, however, was held barred by the statute of frauds. Nevertheless, because they had secured a new tenant on the strength of the alleged agreement, plaintiffs attempted to assert that defendants were estopped to claim possession. The court refused to allow plaintiffs the use of the doctrine of equitable estoppel for the following reason:

> Equity does not estop one from asserting his legal rights to enable another to make a profit which he could not otherwise obtain. As said in *Lindsay v. Cooper,* 94 Ala. 170, 11 So. 325, 330, 16 L.R.A. 813, 33 Am.St.Rep. 105: "[E]stoppels are protective only, and are to be invoked as shields, and not as offensive weapons. Their operation in all cases should be limited to saving harmless or making whole the person in whose favor they arise, and they should not be in any case made the instruments of gain or profit."

*Herring,* 113 S.E.2d at 816 (citations omitted).

Although plaintiffs may lose an economic benefit they once held, they cannot be *unjustly* harmed by what defendant seeks to assert. It is still within plaintiffs' power to

**68**

file a federal income tax return as "owners" of the property, and claim full protection of their asserted right to be treated as owners of the property for federal tax purposes. If plaintiffs are correct that under the Internal Revenue Code and the agreements they are in fact the tax owners of the property, then on filing such a return they will be granted exactly what they are seeking in this action—to be treated as tax owners of the property for federal income tax purposes.

 On the other hand, if plaintiffs are determined by the IRS and reviewing courts not to be the tax owners for federal income tax purposes, then plaintiffs are seeking, in this action, to protect something to which they are not entitled, *i.e.*, a ruling that someone who is actually the owner of the property for federal income tax purposes be prohibited from asserting its rightful status under the federal tax law. Such use of the doctrine of equitable estoppel is not permissible. For this reason, in addition to the two previously discussed, it is not in accordance with the principles of equitable estoppel to hold that HBE is now estopped to assert its position to the IRS.

CONCLUSION

Plaintiffs assert that the agreements entered into by and between them and HBE prevent HBE from asserting to the appropriate tax authorities that it may be entitled to treatment as owner of the C–B property for federal income tax purposes. However, nothing contained in any of the agreements now before the court either expressly or impliedly limits HBE's ability to determine its rights before the proper taxing authorities or take the position it thinks legally correct before such authorities. In addition, it would not be equitable if HBE were estopped from determining its status as tax owner of the C–B property or from asserting such.

Accordingly, for the reasons discussed above, plaintiffs are not entitled to a declaratory judgment and defendants' motion

for summary judgment must be and hereby is GRANTED.

SO ORDERED.