514 S.E.2d 135

V. Les SPRINGOB, Appellant,

v.

Michael L. FARRAR and Yvonne Farrar, Respondents.

No. 2949.

Court of Appeals of South Carolina.

Submitted Dec. 8, 1998.

Decided Feb. 22, 1999.

Rehearing Denied May 8, 1999.

David J. Parrish, of Nexsen, Pruet, Jacobs, Pollard & Robinson, of Charleston, for appellant.

Russell W. Templeton, of Columbia, for respondents.

HOWELL, Chief Judge:

V. Les Springob appeals from a decision by a special referee that he did not have an easement over property owned by Michael L. Farrar and Yvonne Farrar. We affirm.

## I.

Dr. Narayan R. Shenoy owned a lot (Lot 14) in the Spring Valley subdivision in Columbia, and his wife owned the adjoining lot (Lot 13). The Shenoys' home was located on Lot 13, the lot titled solely in Mrs. Shenoy's name, while Lot 14, Dr. Shenoy's lot, was vacant. The Shenoys built a well on Lot 14 and attached it to an irrigation system serving Lot 13.

In May 1986, Dr. Shenoy sold Lot 14 to L.G.B., Inc. The deed from Dr. Shenoy (the L.G.B. Deed) "reserved to the Grantor an easement from Lot Thirteen (13), Block H, onto the hereinabove described premises for ingress and egress to and for the maintenance and operation of a well situated on said Lot Fourteen (14) and Lot Thirteen (13), Block H."

L.G.B., Inc. immediately sold Lot 14 to Irwin Marmorstein, doing business as IRBO Developers. The deed to Marmorstein provided for an easement reserved to Dr. Shenoy for ingress and egress to and for the maintenance and operation of the well on Lot 14.

Marmorstein built a house on Lot 14 and sold the property to the Farrars in August 1988. The deed from Marmorstein to the Farrars stated that "[t]his conveyance is subject to all easements, rights, reservations, restrictions, and covenants of record affecting said property." The Farrars' closing attorney informed them of the easement to the well located on their property.

In May 1989, Mrs. Shenoy sold Lot 13 to Kenneth Perry, and South Carolina Federal Savings Bank obtained title to the property through foreclosure in 1992. During the period when the house on Lot 13 was vacant, Farrar disconnected the

well on his property from the Lot 13 irrigation system and connected it to his own system serving Lot 14.

Springob purchased Lot 13 in May 1993. The deeds in his chain of title did not mention the easement on Lot 14, and he was unaware of it when he purchased Lot 13. While Springob was drilling a well for a new irrigation system, a neighbor told him about the well on Lot 14. Springob questioned Farrar about the well and easement and obtained a copy of the L.G.B. Deed. Springob demanded use of the well, and Farrar refused.

Springob brought this action for trespass and intentional interference with and obstruction of an easement. Springob sought an injunction prohibiting the Farrars from further interfering with the easement. The Farrars answered, contending the easement was personal to Dr. Shenoy and therefore was an easement in gross.

The special referee concluded that the L.G.B. Deed created in favor of Dr. Shenoy an easement in gross that was not alienable or transferable. The referee therefore determined that Springob had no easement over the Farrars' property.[1]

## II.

On appeal, Springob contends the referee erred by concluding the easement reserved in the L.G.B. Deed was an easement in gross rather than an appurtenant easement. We disagree.

In *Tupper v. Dorchester County*, 326 S.C. 318, 487 S.E.2d 187 (1997), our Supreme Court explained the differences between easements in gross and appurtenant easements:

The character of an express easement is determined by the nature of the right and the intention of the parties creating it. An easement in gross is a mere personal privilege to use the land of another; *the privilege is incapable of transfer.* In contrast, an appurtenant easement inheres in the land, concerns the premises, has one terminus

---

1. The Farrars also asserted a counterclaim based on damage to trees caused by water discharged from Springob's pool. The special referee ruled against the Farrars on the counterclaim, and they do not challenge that ruling on appeal.

on the land of the party claiming it, and is essentially necessary to the enjoyment thereof. It also passes with the dominant estate upon conveyance. *Unless an easement has all the elements necessary to be an appurtenant easement, it will be characterized as a mere easement in gross.* *Id.* at 325–26, 487 S.E.2d at 191 (citations omitted) (emphasis added).

In this case, L.G.B. Deed reserved an easement in favor of "the Grantor." The grantor of the L.G.B. Deed was Dr. Shenoy, the sole owner of Lot 14. Because the easement was reserved for Dr. Shenoy only, and Dr. Shenoy did not own Lot 13, the lot benefitted by the easement, the requirement that an appurtenant easement have "one terminus on the land of the party claiming it" is not satisfied.[2]

Accordingly, under *Tupper,* the easement cannot be considered appurtenant and must be construed as an easement in gross. The special referee, therefore, properly ruled that the easement reserved in the L.G.B. Deed was an easement in gross incapable of transfer. *Id.; see also Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 420, 143 S.E.2d 803, 806 (1965) ("An easement, or right-of-way, in gross is a mere personal privilege to the owner of the land and incapable of transfer by him, and is not, therefore assignable or inheritable.").[3]

■ Springob argues, however, that Dr. Shenoy intended "to burden Lot 14 with an appurtenant easement granting *his wife,* as the owner of Lot 13, the right to draw water from the well in Lot 14 in perpetuity." (Emphasis added.). In support of this argument, Springob first points to the contract of sale for Lot 14 executed by Dr. Shenoy several months before the execution of the L.G.B. Deed, which refers to a "perpetual

---

2. The easement was specifically reserved to Dr. Shenoy only. Thus, only Dr. Shenoy and those taking title through him can be viewed as the "party claiming" the easement.

3. Because the elements of an appurtenant easement are not present, any presumption that may exist in favor of appurtenant easements over easements in gross is simply not applicable. *See Smith v. Commissioners of Public Works,* 312 S.C. 460, 467, 441 S.E.2d 331, 336 (Ct.App. 1994) ("[E]asements in gross are not favored by the courts, and an easement will never be presumed as personal *when it may fairly be construed as appurtenant* to some other estate.") (citing 25 Am.Jur.2d *Easements & Licenses* § 13 (1966)).

easement for the continued operation [and] maintenance of water well" to be reserved by the seller. Springob contends that the "Corrective Title to Real Estate" and "Easement Agreement" executed by the Shenoys and L.G.B., Inc. also establish Shenoy's intent to reserve an appurtenant easement in favor of his wife as owner of Lot 13.[4]

The documents relied upon by Springob do not change our conclusion that the easement is an easement in gross.

In construing a deed, the intention of the grantor must be ascertained and effectuated unless that intention contravenes some well-settled rule of law or public policy. In determining the grantor's intent, the deed must be construed as a whole and effect given to every part if it can be done consistently with the law. *The intention of the grantor must be found within the four corners of the deed.* Gardner v. Mozingo, 293 S.C. 23, 25, 358 S.E.2d 390, 391–92 (1987) (emphasis added) (citations omitted).

In this case, the reservation in the L.G.B. Deed clearly and unambiguously reserved an easement to Dr. Shenoy only—it is only by looking to extrinsic evidence that any question arises as to whether Dr. Shenoy intended to reserve an easement in favor of his wife instead of himself. Because the deed is unambiguous, any attempt to determine Dr. Shenoy's intent when reserving the easement must be limited to the deed itself, and it is improper to use extrinsic evidence to contradict the plain language of the deed. *See Gardner,* 293 S.C. at 25, 358 S.E.2d at 392 ("The construction of a clear and unambiguous deed is a question of law for the court. The terms of an unambiguous deed may not be varied or contradicted by evidence drawn from sources other than the deed itself.") (citations omitted); *Scott v. Scott,* 216 S.C. 280, 293, 57 S.E.2d 470, 476 (1950) ("[O]ne of the most valuable safeguards thrown around a deed is that parol evidence is not admissible to vary or contradict the terms of a written contract, and this

---

4. The "Corrective Title to Real Estate" and "Easement Agreement" were executed in November 1995 and recorded in December 1995, well after this dispute arose. These documents specifically characterize the easement as an appurtenant easement granted to Mrs. Shenoy and her heirs and assigns for the benefit of Lot 13.

applies in all its strictness to actions involving deeds."); *Walters v. Summmey Bldg. Systems, Inc.*, 311 S.C. 507, 509, 429 S.E.2d 854, 856 (Ct.App.1993) ("The construction of an unambiguous deed is a question of law, not fact. The terms of such a deed may not be varied or contradicted by evidence drawn from sources other than the deed itself."), *cert. denied* (February 17, 1994).[5]

## III.

■ Springob argues alternatively that the easement reserved in the L.G.B. Deed is an easement in gross of a commercial character and therefore was transferred to him when he purchased the property. *See, e.g., Sandy Island*, 246 S.C. at 422, 143 S.E.2d at 807 ("An easement in gross is of a commercial character when the use authorized by it results primarily in economic benefit rather than personal satisfaction. Easements in gross, if of a commercial character, are alienable."). Because this theory was not raised in the pleadings or argued to the special referee, it is not preserved for appeal. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal....").

## IV.

■ . Springob also argues on appeal that the special referee erred in ruling that a reservation in a deed cannot create an easement in favor of a third party. We find no error.

In his order, the special referee stated that "South Carolina follows the Common Law rule that a reservation in a deed cannot create an easement in favor of a third party." *See, e.g., Estate of Thomson v. Wade*, 69 N.Y.2d 570, 516 N.Y.S.2d 614, 509 N.E.2d 309, 310 (1987) ("The long-accepted rule in this State holds that a deed with a reservation or exception by the grantor in favor of a third party, a so-called 'stranger to the deed,' does not create a valid interest in favor of that third

---

**5.** Because we conclude the contract of sale, corrective deed, and easement agreement cannot be considered when interpreting the easement reserved in L.G.B. Deed, we need not resolve the question of whether these documents were before the special referee or were only marked for identification.

party."); *Pitman v. Sweeney*, 34 Wash.App. 321, 661 P.2d 153, 154 (1983) ("The majority rule is that a reservation or exception in a deed cannot create rights in strangers to the instrument."). We need not, however, determine whether the rule is followed in South Carolina.[6]

As the special referee noted, the easement in this case was *not* reserved to a third party but was reserved to Dr. Shenoy, the grantor. It is only if we accepted Springob's prior argument that the L.G.B. Deed should be construed as reserving an easement in favor of Mrs. Shenoy that the question of the viability in South Carolina of the stranger-to-deed rule would be relevant. As discussed above, because the L.G.B. Deed is clear and unambiguous, we rejected Springob's proposed construction of the deed. The stranger-to-deed rule, therefore, is simply inapplicable to this case, and the question of the rule's viability is purely academic. *See Sangamo Weston, Inc. v. National Surety Corp.*, 307 S.C. 143, 414 S.E.2d 127, 130 (1992) ("This court will not issue advisory opinions and cannot alter precedent based on questions presented in the abstract.").

## V.

█ Finally, Springob contends that Dr. Shenoy had "a sufficient equitable interest in Lot 13 to establish an appurtenant easement on Lot 14 for the benefit of Lot 13." Because this argument was never made to the special referee, we cannot consider it on appeal. *E.g.*, *Taylor v. Medenica*, 324 S.C. 200, 213, 479 S.E.2d 35, 42 (1996) ("Dr. Medenica did not

---

6. A number of states have rejected this rule. *See, e.g.*, *Simpson v. Kistler Inv. Co.*, 713 P.2d 751, 756 (Wyo.1986) ("Joining the enlightened approach that the intent should control and archaic and inappropriate feudalistic principles should no longer apply, this court determines that the [stranger-to-deed] rule is repealed."); *Aszmus v. Nelson*, 743 P.2d 377, 380 (Alaska 1987) (concluding that stranger-to-deed rule conflicts with "general view that a deed should be construed to effect the intent of the grantor"); *Willard v. First Church of Christ, Scientist, Pacifica*, 7 Cal.3d 473, 102 Cal.Rptr. 739, 498 P.2d 987, 989 (1972) (rejecting stranger-to-deed rule as an "inapposite feudal shackle"); *Townsend v. Cable*, 378 S.W.2d 806, 808 (Ky.1964) (rejecting stranger-to-deed rule as "archaic" and "inconsistent with the basic principle followed in the construction of deeds, which is to determine the intention of the grantor as gathered from the four corners of the instrument.").

raise the applicability of this federal law at trial. Therefore, his argument is not preserved for appeal.").

Accordingly, for the foregoing reasons, the decision of the special referee is hereby

**AFFIRMED.**

STILWELL, J., concurs.

ANDERSON, J., dissents in a separate opinion.

ANDERSON, Judge (dissenting):

I respectfully dissent. I disagree with the analysis and reasoning of the majority. I would reverse.

The majority plucks isolated quotes from South Carolina cases relating to easements to justify the erroneous result reached. The holding by the majority turns the law of easements on its head. Indubitably, the holding enunciated by the majority is fatally flawed when juxtaposed to existing easement law in South Carolina. The efficacy of the majority's opinion is to place the law of easements in a continuum of confusion.

### STANDARD OF REVIEW

The determination of the existence of an easement is a question of fact in a law action and subject to an "any evidence" standard of review when tried by a judge without a jury. *Slear v. Hanna,* 329 S.C. 407, 496 S.E.2d 633 (1998); *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997). However, the determination of the scope or extent of the easement is a question in equity. *Tupper, supra; Smith v. Commissioners of Public Works,* 312 S.C. 460, 441 S.E.2d 331 (Ct.App.1994). Therefore, in an action tried before a Special Referee with direct appeal, this Court may take its own view of the evidence on the latter issue. *Tupper, supra; Townes Assocs., Ltd. v. City of Greenville,* 266 S.C. 81, 221 S.E.2d 773 (1976).

### LAW/ANALYSIS

Springob asserts the Special Referee erred in holding the easement Dr. Shenoy reserved for the use of the well was an

easement in gross rather than an easement appurtenant. I agree.

## Easement Appurtenant or Easement in Gross

An "easement" is the right of one person to use the land of another for a specific purpose. *Steele v. Williams,* 204 S.C. 124, 28 S.E.2d 644 (1944). The character of an express easement is determined by the nature of the right and the intention of the parties creating it. *Tupper, supra.* An easement may be created by reservation in a deed. *Douglas v. Medical Investors, Inc.,* 256 S.C. 440, 182 S.E.2d 720 (1971).

Easements are divided into two classes: easements appurtenant and easements in gross. *Safety Bldg. & Loan Co. v. Lyles,* 131 S.C. 542, 128 S.E. 724 (1925). "An appendant or appurtenant easement must inhere in the land, concern the premises, have one terminus on the land of the party claiming it, and be essentially necessary to the enjoyment thereof." *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 420, 143 S.E.2d 803, 806 (1965). It passes with the dominant estate upon conveyance. *Carolina Land Co. v. Bland,* 265 S.C. 98, 217 S.E.2d 16 (1975). In contrast, an easement in gross is a mere personal privilege to use the land of another. *Tupper v. Dorchester County,* 326 S.C. 318, 487 S.E.2d 187 (1997). The privilege is incapable of transfer. *Id.* An easement in gross is not, therefore, assignable or inheritable. *Id.; Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 143 S.E.2d 803 (1965).

Easements in gross are not favored by the courts. An easement will never be presumed as personal when it may fairly be construed as appurtenant to some other estate. Thus, if an easement is in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the parties as to its use, and there is nothing to show the parties intended it to be a mere personal right, it should be held to be an easement appurtenant and not an easement in gross. If doubt exists as to its real nature, an easement is presumed to be appurtenant and not in gross. 25 Am.Jur.2d *Easements and Licenses* § 12 (1996).

In construing a deed, it is elementary the cardinal rule of construction is to ascertain and effectuate the intention of the parties, unless that intention contravenes some well settled

rule of law or public policy. *Sandy Island Corp., supra.* The intention of the parties must be determined by a fair interpretation of the grant or reserve creating the easement. *Id.* If the language in the grant or reservation is uncertain or ambiguous in any respect, the court may inquire into and consider all surrounding circumstances, including the construction which the parties have placed on the language. *See Smith v. Commissioners of Public Works,* 312 S.C. 460, 441 S.E.2d 331 (Ct.App.1994) (whether grant in written instrument creates easement and type of easement created are to be determined by ascertaining intention of parties as gathered from language of instrument; grant should be construed so as to carry out that intention). *See also* 25 Am.Jur.2d *Easements and Licenses* § 22 (1996) (if language is uncertain or ambiguous in any respect, all surrounding circumstances, including construction which parties have placed on language, may be inquired into and taken into consideration by court, to end that intention of parties may be ascertained and given effect).

Viewing all of the evidence in the record, Dr. Shenoy intended to create a perpetual easement in favor of Lot 13 when he reserved the easement in the original deed.

### Viability of Common Law Rule

Under the common law rule, one cannot reserve an interest in property to a stranger to the title. *Willard v. First Church of Christ, Scientist, Pacifica,* 7 Cal.3d 473, 102 Cal.Rptr. 739, 498 P.2d 987 (1972). *See also* Annotation, *Reservation or Exception in Deed in Favor of Stranger,* 88 A.L.R.2d 1199 (1963) (early rule is that in instrument of conveyance a mere reservation in favor of stranger to deed is inoperative to create in him any right or interest in property conveyed). The rule was based on feudal considerations. *Willard, supra.* As the California Supreme Court elucidated in *Willard:* "While a reservation could theoretically vest an interest in a third party, the early common law courts vigorously rejected this possibility, apparently because they mistrusted and wished to limit conveyance by deed as a substitute for livery by seisin." *Id.* at 989.

Several states that have retained the common law rule in recent cases have done so on the basis of *stare decisis. See,*

*e.g., Tripp v. Huff,* 606 A.2d 792, 793 (Me.1992) (court declined to depart from common law rule; " 'Stare decisis must operate with plenary force in the law of real property to maintain the certainty and predictability which Courts traditionally have made the benchmark of this area of jurisprudence and upon which, accordingly, the public has been induced to place strong reliance.' "); *Estate of Thomson v. Wade,* 69 N.Y.2d 570, 516 N.Y.S.2d 614, 509 N.E.2d 309, 310 (1987) (refusing to abandon long-accepted rule in New York which holds that deed with reservation by grantor in favor of third party, so-called "stranger to the deed," does not create valid interest in favor of that third party; in area of property law, " 'stability and adherence to precedent are generally more important than a better or even a 'correct' rule of law' "). *See also Pitman v. Sweeney,* 34 Wash.App. 321, 661 P.2d 153 (1983) (following rule that reservation or exception in deed cannot create rights in strangers to the instrument).

A number of states have held the common law rule must succumb to the intent of the grantor. *See, e.g., Medhus v. Dutter,* 184 Mont. 437, 603 P.2d 669 (1979) (holding, in proper case, court will depart from common law rule to give effect to grantor's intent; before creation of easement in stranger to conveyance will be recognized, intent of grantor to create easement must be clearly shown).

Other courts have simply held a grantor may create an easement in favor of a third party in the same deed he conveys fee simple estate in the land. *See Enderle v. Sharman,* 422 N.E.2d 686 (Ind.Ct.App.1981). *See also Katkish v. Pearce,* 490 A.2d 626 (D.C.1985) (adopting what court believed to be the more enlightened view that by a single instrument of conveyance there may be created an estate in land in one person and an easement in another); *Borough of Wildwood Crest v. Smith,* 210 N.J.Super. 127, 509 A.2d 252, 261 (1986) (noting legal writers are critical of common law rule and Restatement of Property refuses to adopt it; court adopted approach of Restatement of Property § 472 (1944), which provides: " 'By a single instrument of conveyance, there may be created an estate in land in one person and an easement in another.' "); *Zurn Indus., Inc. v. Lawyers Title Ins. Corp.,* 33 Ohio App.3d 59, 514 N.E.2d 447 (1986) (finding grantor could create estate in land in one person and reserve easement in favor of third party by single instrument of conveyance).

Finally, some jurisdictions have rejected the common law rule outright. In abandoning the common law rule, the Court of Appeals of Kentucky explained:

We have no hesitancy in abandoning this archaic and technical rule. It is entirely inconsistent with the basic principle followed in the construction of deeds, which is to determine the intention of the grantor as gathered from the four corners of the instrument. Technicalities should be disregarded where the intention is clear.

*Townsend v. Cable*, 378 S.W.2d 806, 808 (Ky.Ct.App.1964) (citations omitted).

Relying on *Townsend, supra*, the Supreme Court of Oregon, in *Garza v. Grayson*, 255 Or. 413, 467 P.2d 960 (1970), rejected the common law rule. In *Garza*, the plaintiffs sought a declaration establishing the existence of an easement over the defendants' land for the construction and maintenance of a sewer line serving the plaintiffs' adjoining land. The trial court granted relief to the plaintiffs and the defendants appealed. The Oregon Supreme Court held:

[The common law rule] is derived from a narrow and highly technical interpretation of the meaning of the terms "reservation" and "exception" when employed in a deed. It is said that a person other than the grantor "has no interest in the land to be excepted from the grant, and likewise none from which a reservation can be carved out."

We do not regard this as a satisfactory reason for defeating the grantor's intention to create an easement in a person other than the grantee of the estate conveyed in the deed, if the intention to create the easement is adequately expressed in the deed. The view we take is supported by most if not all the legal commentators and by the better reasoned cases. It is also adopted by the Restatement. 5 Restatement of the Law of Property, § 472, p. 2966 (1944) states the rule as follows:

"By a single instrument of conveyance, there may be created an estate in land in one person and an easement in another."

*Garza*, 467 P.2d at 961 (footnotes omitted).

The Supreme Court of California referred to the common law rule as "an inapposite feudal shackle." *Willard v. First*

*Church of Christ, Scientist, Pacifica,* 7 Cal.3d 473, 102 Cal.
Rptr. 739, 498 P.2d 987, 989 (1972). The court explained:

> In considering our continued adherence to [the common law
> rule], we must realize that our courts no longer feel con-
> stricted by feudal forms of conveyancing. Rather, our
> primary objective in construing a conveyance is to try to
> give effect to the intent of the grantor. In general, there-
> fore, grants are to be interpreted in the same way as other
> contracts and not according to rigid feudal standards. The
> common law rule conflicts with the modern approach to
> construing deeds because it can frustrate the grantor's
> intent....
>
> In view of the obvious defects. of the rule, this court has
> found methods to avoid it where applying it would frustrate
> the clear intention of the grantor....
>
> ....
>
> ... Since the rule may frustrate the grantor's intention in
> some cases even though it is riddled with exceptions, we
> follow the lead of Kentucky and Oregon and abandon it
> entirely.

*Willard,* 102 Cal.Rptr. 739, 498 P.2d at 989–91 (citations
omitted).

In renouncing the common law rule, the North Dakota
Supreme Court, in *Malloy v. Boettcher,* 334 N.W.2d 8 (N.D.
1983), explicated:

> For reasons hereinafter discussed, we abandon the com-
> mon law rule and apply, in its stead, the rule that a
> reservation or exception can be effective to convey a proper-
> ty interest to a third party who is a stranger to the deed or
> title of the property where that is determined to have been
> the grantor's intent.
>
> The common law rule that a reservation or exception
> cannot constitute a conveyance to a third party is based
> upon an extremely narrow interpretation of the terms "res-
> ervation" and "exception." When a grantor attempts to
> reserve or except a property interest unto a third party the
> common law rule may operate to defeat the obvious intent
> of the grantor to transfer the reserved or excepted interest
> to the third party. It is well settled that the primary
> purpose in construing a deed is to ascertain and effectuate

the intent of the grantor. Several jurisdictions have abandoned the common law rule on the ground that it serves no useful purpose and is contrary to the rule that a deed must be construed to carry out a grantor's intent if at all possible.
. . . .

In accordance with the foregoing discussion we follow the jurisdictions of California, Oregon, and Kentucky in abandoning the common law rule that a reservation or exception unto a third party who is a stranger to the deed or title of the property cannot constitute a conveyance of the property to the third person.

*Malloy*, 334 N.W.2d at 9–10 (citations omitted). *See also Aszmus v. Nelson*, 743 P.2d 377, 380 (Alaska 1987) (holding common law rule "clearly conflicts with our general view that a deed should be construed to effect the intent of the grantor").

I find persuasive the reasoning of the courts that have rejected the common law rule. The common law rule is a fossilized shackle on property rights. The efficacy of the common law rule in modern property relationships is obsolete and lacking in any utilitarian value. Moreover, the rule is antiquated and in direct contradiction with our cardinal rule of construction, which is to ascertain and effectuate the intention of the parties. *See Sandy Island Corp. v. Ragsdale*, 246 S.C. 414, 143 S.E.2d 803 (1965).

Additionally, we are not bound by *stare decisis* to retain the common law rule, despite the Court's mention of the rule in *Glasgow v. Glasgow*, 221 S.C. 322, 70 S.E.2d 432 (1952). In that case, the Supreme Court addressed the issue of the validity of a life estate a husband reserved in favor of his wife. The Court noted the rule "a life estate may not be reserved to, or excepted in favor of, a stranger is long-established and logical." *Id.* at 331, 70 S.E.2d at 435. However, the Court did not expressly adopt or reject this rule. *Id.* Instead, it recognized the exception to the rule that such a reservation may be done in favor of the spouse of the grantor. *Id.* The Court ruled the wife "had an inchoate right of dower in the land, a homestead right and an expectancy of inheritance from her husband if she survived him, which she did (and she was legally dependent upon him for support)." *Id.* at 331, 70

S.E.2d at 435. The Court concluded the wife was not a stranger to the title nor was she a stranger to the deed because she had renounced her dower rights. *Id.* Additionally, the Court explained: "Pure logic, for its own sake, should not be allowed to frustrate the clearly ascertained intention of a grantor which does not violate an established rule of construction or of law." *Id.* at 333, 70 S.E.2d at 436.

## CONCLUSION

The law of South Carolina permits a grantor to reserve an easement in favor of a third party in the same deed that conveys the servient estate. I reject the common law rule. Specifically, I adopt the rule in South Carolina that a grantor *may* reserve an easement in favor of a third party stranger. Here, Dr. Shenoy reserved a valid easement appurtenant in favor of Lot 13, the lot held by his wife when he conveyed Lot 14. Because the easement was appurtenant, it was, concomitantly, alienable and transferable. Springob, therefore, holds an appurtenant easement over the Farrars' property. Accordingly, I would reverse the order of the Special Referee.