635 S.E.2d 558

**Dorothy WINDHAM, Appellant**

v.

**Donald Allen RIDDLE and Jennifer D. Riddle, Respondents.**

No. 4145.

Court of Appeals of South Carolina.

Heard March 7, 2006.

Decided Aug. 7, 2006.

Rehearing Denied Sept. 25, 2006.

Clinch K. Belser, Jr., Michael J. Polk and H. Freeman Belser, all of Columbia, for Appellant.

Edgar W. Dickson, of Orangeburg, for Respondents.

HUFF, J.:

In this property dispute, Dorothy Windham appeals the master-in-equity's finding that Donald and Jennifer Riddle (the Riddles) had an appurtenant easement for irrigation purposes over property owned by Windham. We reverse and remand.

## FACTS

The Riddles and Windham are adjacent property owners in Orangeburg County. Both parties purchased their property from a common grantor, Danny Covington. Covington purchased the combined property in 1991 from Edisto Farm Credit. The previous owner, Marvin Davis, had used the property as a dairy farm. In 1992, Covington had the property surveyed and divided into two tracts, 1–A and 1–B.

On November 15, 1992, Covington and Windham entered into a contract of sale for tract 1–B (the Windham tract). Windham had ten years to complete the purchase of the tract but the contract allowed for early pre-payment. In addition to the terms of the sale, the contract provided in part:

> Seller to have a 50' easement of ingress and egress for the purpose of operating and maintaining an irrigation system. [S]aid easement to be centered over existing underground piping. Seller agrees not to pump pond lower than 4' below full stage. Existing overhead utilities easement to remain

as is. When possible seller to run system at times convenient to buyer. Buyer not restricting use more than 36 hours at a given time. Seller to have all rights to use of waters in pond....

Windham and her family used her tract as a family retreat, and visited approximately every other weekend. Covington continued to farm on tract 1–A.

In June of 1993, Covington leased part of tract 1–A (the Riddle tract) to the Riddles, who began to operate their dairy farm on the tract. In the spring of 1994, Covington helped the Riddles install an aboveground irrigation system over the existing underground piping on the Windham tract. The pumping station for the irrigation system is located on the pond and takes water to the Riddle tract. Access to the pump is controlled by a locked gate on the Windham tract.

In 1997, Covington conveyed the Riddle tract to the Riddles. The deed provided:

Said conveyance is subject to a 30–foot access easement, a 50–foot irrigation easement, a 25–foot access easement along existing woods[,] road and a canal, all as set forth and shown on the above-referenced plat.

On December 16, 1998, Covington deeded the tract to Windham. The deed stated, in part:

Said conveyance is subject to a (fifty) 50 foot easement of ingress and egress for the purpose of operating and maintaining an irrigation system and an agreement as to the use of said irrigation easement and irrigation system as set forth in the certain Contract of Sale by and between Danny Covington a/k/a/ J. Danny Covington, as Seller and Dorothy Windham, as Buyer dated November 15, 1992 and recorded in the office of the Register of Deeds for Orangeburg County on December 28, 1991....

Initially, Windham allowed the Riddles to use the water in the pond in the manner described in the contract between Windham and Covington. However, Windham believed that the Riddles exceeded the use of the easement as contemplated in the original agreement between Covington and Windham. Accordingly, Windham brought suit seeking a declaratory judgment and injunctive relief asserting the easement created

in their contract of sale and deed was an easement in gross and the Riddles had no right to this easement.[1] The Riddles answered, contending Windham was estopped from denying the validity of the easement. Further, they asserted the easement is appurtenant to the Riddle tract.

After a trial, the master-in-equity found that the contract of sale between Windham and Covington, along with the Windham and Riddle deeds, created various easements for irrigation purposes. Additionally, the master concluded the easements were appurtenant and, therefore, passed to the Riddles when they purchased the Riddle tract. The master also found no action for trespass could be maintained because as owners of the dominant estate, the Riddles did not exceed the limits of the easement. Accordingly, the master dismissed Windham's complaint. The master subsequently denied Windham's motion to alter or amend the judgment. This appeal followed.

## STANDARD OF REVIEW

■ The determination of the extent of a grant of an easement is an action in equity. *Tupper v. Dorchester County*, 326 S.C. 318, 323, 487 S.E.2d 187, 190 (1997). Thus, this court may take its own view of the evidence. *Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## LAW/ANALYSIS

■ Windham argues the master erred by concluding the easement was appurtenant rather than in gross. We agree.

■ Whether an express easement is appurtenant or in gross is determined by the nature of the right and the intention of the parties creating the easement. *Tupper*, 326 S.C. at 325, 487 S.E.2d at 191 (1997). In *Tupper*, the court explained the distinction between an easement in gross and an easement appurtenant:

---

1. In addition, Windham alleged the Riddles operated the irrigation pump excessively, drained the water in the pond too low, and left the gate open on the road to the pond, allowing strangers and cows to roam freely upon the Windham tract. Windham also maintained the Riddles' son hunted on the Windham tract without her permission.

An easement in gross is a mere personal privilege to use the land of another; the privilege is incapable of transfer. In contrast, an appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof. It also passes with the dominant estate upon conveyance. Unless an easement has all the elements necessary to be an appurtenant easement, it will be characterized as a mere easement in gross.

*Id.* at 325, 487 S.E.2d at 191 (citations omitted).

In the present case, the contract of sale between Covington and Windham was an installment land contract. Typically, as in the contract here, the seller retains legal title until the purchase price has been fully paid, and the purchaser is entitled to immediate possession. *See Lewis v. Premium Inv. Corp.*, 351 S.C. 167, 170–73, 568 S.E.2d 361, 363–64 (2002) (stating the seller retains legal title until the purchase price is fully paid and the vendee in possession of the land is the owner of an equitable interest in the property).

An easement cannot exist where both the purported servient and dominant estates are owned by the exact same person. *Haselden v. Schein,* 167 S.C. 534, 539, 166 S.E. 634, 635 (1932). As Covington retained legal title to the Windham tract and also held title to the Riddle tract, no easement could have been created by the Windham contract of sale in 1992.[2]

In 1998, Covington deeded the Windham tract to her. The Windham deed referred to the language in the contract of sale, which reserved an easement in the favor of "the Seller" only. By the time of the transfer of the deed and creation of the easement, Covington no longer owned the Riddle tract, the land benefited by the easement.

We find the current case similar to *Springob v. Farrar,* 334 S.C. 585, 514 S.E.2d 135 (Ct.App.1999). In *Springob,* Dr. Shenoy owned Lot 14, and his wife owned the adjoining lot, Lot 13, where the Shenoys's home was located. The Shenoys built a well on Lot 14 and attached the well to an irrigation

---

2. We find no language in the Riddle deed creating an appurtenant easement. The Riddle deed merely said the land was "subject to a 50-foot irrigation easement."

system serving Lot 13. In 1986, Dr. Shenoy sold Lot 14 to L.G.B., Inc., and the deed "reserved to Grantor" an easement on Lot 13 for use of the well on Lot 14. A house was built on Lot 14 and eventually the Farrars bought the property. The Farrar deed stated "this conveyance is subject to all easements ... of record affecting said property." Their closing attorney informed them of the well located on their property. In 1989, Mrs. Shenoy sold Lot 13 to Kenneth Perry, and South Carolina Federal Savings Bank obtained title to the lot through foreclosure. While Lot 13 was vacant, the Farrars disconnected the well on their property from the Lot 13 irrigation system and connected it to their own system serving Lot 14.

In 1993, Springob purchased Lot 13 and eventually demanded use of the well. When the Farrars refused, Springob brought suit. In finding the easement was in gross rather than appurtenant, this court elucidated:

> In this case, [the] L.G.B. Deed reserved an easement in favor of "the Grantor." The grantor of the L.G.B. Deed was Dr. Shenoy, the sole owner of Lot 14. Because the easement was reserved for Dr. Shenoy only, and Dr. Shenoy did not own Lot 13, the lot benefit[ ]ed by the easement, the requirement that an appurtenant easement have "one terminus on the land of the party claiming it" is not satisfied.

*Id.* at 589, 514 S.E.2d at 137–38.

Similar to the reservation in *Springob*, the language in the contract of sale referred to in the Windam deed reserved the easement for "the Seller" only. Like Dr. Shenoy, Covington did not own the purported dominant estate at the time of the creation of the easement. The requirement that an appurtenant easement have a terminus on the land of the party claiming it is not satisfied. Accordingly, because the elements of an appurtenant easement are not present, the presumption that exists in favor of appurtenant easements simply is not applicable. *See Springob*, 334 S.C. at 589 n. 3, 514 S.E.2d at 138 n. 3. We conclude the master erred in holding the easement was appurtenant rather than in gross.

Windham also argues the master erred in failing to enjoin the Riddles from crossing the Windham tract. Because we hold the easement was in gross and thus the Riddles had no

right to use the easement, we find the master erred by not enjoining the Riddles from using the easement.

## CONCLUSION

Accordingly, for the foregoing reasons, the decision of the master finding the Riddles possessed an irrigation easement appurtenant to their land is reversed and the matter remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

GOOLSBY, J., concurs.

STILWELL, J., dissents in a separate opinion.

STILWELL, J., (dissenting):

I respectfully dissent because I conclude an appurtenant easement was established in the contract for the sale of the land from Covington to Windham. The majority finds no appurtenant easement was created because Covington needed to both (1) retain a sufficient interest in the land he sold by contract to Windham, and (2) remain the owner of the dominant estate until title passed to Windham. I am not convinced either proposition is essential to the creation of the easement appurtenant in this case.

As a threshold issue, there is a question as to the proper scope of appellate review. As stated in the majority opinion, the determination of the extent of an easement is a question in equity, allowing the appellate court to take its own view of the evidence. *Slear v. Hanna,* 329 S.C. 407, 410–11, 496 S.E.2d 633, 635 (1998). However, the determination whether an easement exists is a question of fact in a law case subject to an "any evidence" standard of review when tried by a judge without a jury. *Id.* at 410, 496 S.E.2d at 635; *Jowers v. Hornsby,* 292 S.C. 549, 551–52, 357 S.E.2d 710, 711 (1987). If this case is viewed from the standpoint of whether an appurtenant easement was created, then it is a law case and our scope of review is narrow. Nevertheless, I am convinced that under either a narrow or broad scope of review, the trial judge's analysis should prevail.

The key to resolving this case lies in determining when the easement was created. The majority cites *Haselden v. Schein*, 167 S.C. 534, 539, 166 S.E. 634, 635 (1932), for the proposition that an easement cannot exist where both the purported servient and dominant estates are owned by the same person. Because Covington retained bare legal title to the tract he sold by contract to Windham, the majority opinion concludes his ownership violates the *Haselden* rule. However, the facts and holding of *Haselden* are inapposite. In *Haselden*, the dominant and servient estates were merged well after the creation of the easement, and the court ultimately concluded the easement was not extinguished, stating "[t]he rule of law that an easement may be extinguished by the conveyance of the servient estate without notice to the purchaser, of the easement, carries with it the idea that there has been an intentional concealment or deception which imposed upon the purchaser. No such thing is shown here." *Id.* at 540, 166 S.E. at 636. There is no contention that any concealment, intentional or otherwise, is involved in this case.

In my view, the majority errs in dismissing the possibility that the easement was created in the contract for the sale of the land from Covington to Windham. That document, rather than the deed, is the instrument that established the legal relationship between the parties. It was the functional equivalent of a conveyance coupled with a method of financing "frequently called a 'poor man's mortgage.'" *See Lewis v. Premium Inv. Corp.*, 351 S.C. 167, 171, 568 S.E.2d 361, 363 (2002) (containing an excellent discussion concerning the nature and characteristics of an installment contract for the sale of land). All rights of possession to the land described in the contract were conveyed to Windham, and had Covington not reserved the easement in the contract, he would never have been able to assert an easement of any type upon the later transfer of the bare legal title, even if he had still owned the dominant estate. Any attempt to do so would have been a breach of the terms of the contract that established the legal relationship between the parties.

There is little legal distinction, insofar as the respective rights of the parties are concerned, between a transaction consisting of a deed and note and mortgage as security for the payment of the remaining purchase price and an executory

contract requiring retention of the title in the seller until the purchase price is totally paid. As stated in *Lewis*, "[f]or years, in an executory contract for the sale of land our Court has equated the vendor with the mortgagee and the vendee with the mortgagor." *Id.* at 173, 568 S.E.2d at 364 (citing *Dempsey v. Huskey*, 224 S.C. 536, 80 S.E.2d 119 (1954)); *see also Southern Pole Bldgs., Inc. v. Williams*, 289 S.C. 521, 524, 347 S.E.2d 121, 122–23 (Ct.App.1986).

Because I conclude the easement appurtenant was created in the contract for the sale of the land, no discussion of the requirement that an appurtenant easement have one terminus on the land of the party claiming is necessary. *See Springob v. Farrar*, 334 S.C. 585, 589, 514 S.E.2d 135, 137 (Ct.App.1999) (requiring an appurtenant easement have a terminus on the land of the party claiming the easement). Nevertheless, *Springob*, heavily relied upon by the majority, is easily distinguishable. In *Springob*, the person who reserved the easement *never* owned the purported dominant estate, only owning at one time the servient estate. *Id.* at 587, 514 S.E.2d at 136. In this case, Covington unquestionably owned the dominant estate at the time the contract was entered into.

Furthermore, the fact that the Riddle deed did not create an appurtenant easement, as noted in footnote 2 of the majority opinion, is not dispositive. The deed to the Riddles could not have been an instrument used to create an easement over the Windham tract. It could have mentioned that easement, since the Riddle deed conveyed the dominant estate. However, there is no necessity to expressly mention an easement appurtenant when conveying the dominant estate. *Smith v. Comm'rs of Pub. Works*, 312 S.C. 460, 468, 441 S.E.2d 331, 336 (Ct.App.1994). The easement is but one of the numerous "rights, members, hereditament and appurtenances to said premises belonging, or in any wise incident or appertaining" and accompanies the conveyance of the fee. S.C.Code Ann. § 27–7–10 (Rev. 1991).

In my judgment, all the elements necessary for the creation of an easement appurtenant were in existence at the time the contract was entered into between Covington and Windham, and the later conveyance of the "bare legal title" was a

required fulfillment of the contractual terms already set in stone. I would affirm, and I therefore dissent.