672 S.E.2d 578

**Dorothy WINDHAM, Respondent,**

v.

**Donald Allen RIDDLE and Jennifer D. Riddle, Petitioners.**

No. 26586.

Supreme Court of South Carolina.

Heard Oct. 7, 2008.

Decided Jan. 20, 2009.

---

194

Pete Kulmala, of Harvey & Kulmala, of Barnwell, for Petitioners.

Clinch H. Belser, Jr. and Michael J. Polk, of Belser & Belser PA, of Columbia, for Respondent.

Justice BEATTY:

In this declaratory judgment action brought by Dorothy Windham, the master-in-equity found Donald and Jennifer Riddle (the Riddles) have an appurtenant easement for access and irrigation purposes across Windham's property. The Court of Appeals reversed the master-in-equity's holding. *Windham v. Riddle*, 370 S.C. 415, 635 S.E.2d 558 (Ct.App. 2006). This Court granted the Riddles' petition for a writ of certiorari to review the Court of Appeals' decision. We affirm.

## FACTUAL/PROCEDURAL HISTORY

The Riddles and Windham are adjacent property owners in Orangeburg County. Both parties purchased their property from a common grantor, Danny Covington. Covington purchased the combined property in 1991 from Edisto Farm Credit. Marvin Davis, the previous owner, had used the property as a dairy farm. In 1992, Covington had the property surveyed and divided into two tracts, 1–A and 1–B.

On November 15, 1992, Covington and Windham entered into a contract of sale for the approximately 142.38 acre tract 1–B (the Windham tract). Pursuant to the terms of the contract, Windham agreed to purchase the tract in monthly installments over a ten-year period but was allowed to pre-pay the balance without penalty. During the period of these payments, Windham was allowed full possession and occupancy of the property. After Windham satisfied the purchase price, Covington agreed to deliver "good and marketable title" to Windham. In addition to these terms, the contract provided in part:

Seller to have a 50' easement of ingress and egress for the purpose of operating and maintaining an irrigation system. [S]aid easement to be centered over existing underground piping. Seller agrees not to pump pond lower than 4' below

full stage. Existing overhead utilities easement to remain as is. When possible seller to run system at times convenient to buyer. Buyer not restricting use more than 36 hours at a given time. Seller to have all rights to use waters in pond. Seller and buyer mutually agree to use pond dam and canal as an easement. [S]eller providing buyer 25' easement for ingress and egress to canal through existing woods road.

After entering into the contract of sale, Windham and her family used the tract as a family retreat, and they visited every other weekend. Covington continued to farm on tract 1–A.

In June of 1993, Covington leased a portion of the 257.49 acre tract 1–A (the Riddle tract) to the Riddles, who began using the land to operate a dairy farm. In the spring of 1994, Covington and the Riddles installed an aboveground irrigation system over the existing underground piping on the Windham tract. The pumping station for the irrigation system is located on the pond that Windham owns and transports water to the Riddle tract. Access to the pump is controlled by a locked gate on the Windham tract.

On November 17, 1997, Covington conveyed tract 1–A in its entirety to the Riddles. The deed provided in pertinent part:

Said conveyance is subject to a 30–foot easement, a 50–foot irrigation easement, a 25–foot access easement along existing woods road and a canal, all as set forth and shown on the above-referenced plat.

On December 15, 1998, pursuant to the installment contract, Covington deeded the tract to Windham after she paid off the purchase price. The deed stated in relevant part:

Said conveyance is subject to a (fifty) 50 foot easement of ingress and egress for the purpose of operating and maintaining an irrigation system and an agreement as to the use of said irrigation easement and irrigation system as set forth in that certain Contract of Sale by and between Danny Covington a/k/a J. Danny Covington, as Seller and Dorothy Windham, as Buyer dated November 15, 1992 and recorded in the office the Register of Deeds for Orangeburg County on December 28, 1992. . . .

Although Windham initially allowed the Riddles to use the pond for irrigation purposes, she brought an action for declaratory judgment and injunctive relief against the Riddles on November 12, 2003, claiming the Riddles exceeded the use of the easement as contemplated by Covington and Windham in the contract of sale. In her Complaint, Windham specifically alleged the Riddles: allowed their livestock to roam on Windham's property; destroyed Windham's fences, gates, and security devices; operated the irrigation system for excessive periods of time which created a nuisance; obtained waters from Windham's property without any legal right; and allowed third parties access to the Windham property for "unauthorized purposes." As the basis for her action, Windham asserted the easement created in the contract of sale and resulting deed was an easement in gross and, thus, the Riddles had no right to this easement. In response, the Riddles asserted Windham was estopped from denying the validity of the easement. The Riddles also claimed the easement was appurtenant to the Riddle tract.

After a trial, the master-in-equity found that the contract of sale between Windham and Covington, in conjunction with the Windham and Riddle deeds, established "various easements for the purpose of irrigating Tract 1–A, the Riddle property." The master further held the easements were appurtenant to the Riddle tract and, therefore, passed to the Riddles when Covington conveyed the land to them. Additionally, the master concluded that Windham could not maintain an action for trespass because the Riddles, the owners of the dominant estate, did not abuse or exceed the limits of the easements. Ultimately, the master dismissed Windham's Complaint with prejudice and ordered that the "irrigation easements are appurtenant to the real estate subject to this action and exist as set forth on the recorded plats."

Subsequently, the master denied Windham's motion to alter or amend the judgment. Windham then appealed the master's decision to the Court of Appeals.

In a divided opinion, the Court of Appeals reversed the decision of the master-in-equity. *Windham v. Riddle,* 370 S.C. 415, 635 S.E.2d 558 (Ct.App.2006). The majority found the master erred by concluding that the easement at issue was

appurtenant rather than in gross. Prefacing its analysis with a general discussion of the differences between an appurtenant easement and an easement in gross, the majority focused on the installment land contract that was the subject of the dispute. Citing this Court's opinion in *Lewis v. Premium Investment Corporation,* the majority noted that typically in this type of contract, "the seller retains legal title until the purchase price has been fully paid, and the purchaser is entitled to immediate possession." *Id.* at 419, 635 S.E.2d at 560; *see Lewis v. Premium Inv. Corp.,* 351 S.C. 167, 170–73, 568 S.E.2d 361, 363–64 (2002) (stating that in an installment land contract, the seller retains legal title until the purchase price is fully paid and that the vendee in possession of the land is the owner of an equitable interest in the property).

Relying on the long-standing common law rule that an easement cannot exist where both the purported servient and dominant estates are owned by the same person, the majority found that an easement could not have been created by the 1992 contract of sale. *Id.* at 419, 635 S.E.2d at 560 (citing *Haselden v. Schein,* 167 S.C. 534, 539, 166 S.E. 634, 635 (1932)). Specifically, the majority stated, "[a]s Covington retained legal title to the Windham tract and also held title to the Riddle tract, no easement could have been created by the Windham contract of sale in 1992." *Windham,* 370 S.C. at 419, 635 S.E.2d at 560.

The majority further relied on its earlier decision in *Springob v. Farrar,* 334 S.C. 585, 514 S.E.2d 135 (Ct.App.1999). In *Springob,* Dr. Shenoy owned Lot 14, and his wife owned adjoining Lot 13, where the Shenoys' home was located. The Shenoys built a well on Lot 14 and attached it to an irrigation system serving Lot 13. In 1986, Dr. Shenoy sold Lot 14 to L.G.B., Inc. The deed from Dr. Shenoy "reserved to the Grantor" an easement on Lot 13 for use of the well on Lot 14. A house was built on Lot 14 and eventually the Farrars bought the property in 1988. The deed to the Farrars stated "this conveyance is subject to all easements, rights, reservations, restrictions, and covenants of record affecting said property." *Id.* at 587, 514 S.E.2d at 137. The Farrars' closing attorney informed them of the easement to the well located on their property. In 1989, Mrs. Shenoy sold Lot 13 to Kenneth Perry, and the South Carolina Federal Savings Bank obtained

title to the lot through foreclosure. While Lot 13 was vacant, the Farrars disconnected the well on their property from the Lot 13 irrigation system and connected it to their own system serving Lot 14.

In 1993, Springob purchased Lot 13 unaware of the easement on Lot 14. After discovering the well on Lot 14, Springob demanded use of the well, but the Farrars refused. Springob brought an action for trespass and intentional interference with and obstruction of an easement. He also sought an injunction prohibiting the Farrars from further interfering with the easement. The Farrars answered, asserting the easement was personal to Dr. Shenoy and, therefore, was an easement in gross. The Court of Appeals agreed with the Farrars, finding the easement was in gross rather than appurtenant. In so holding, the Court of Appeals stated:

> In this case, L.G.B. Deed reserved an easement in favor of "the Grantor." The grantor of the L.G.B. Deed was Dr. Shenoy, the sole owner of Lot 14. Because the easement was reserved for Dr. Shenoy only, and Dr. Shenoy did not own Lot 13, the lot benefited by the easement, the requirement that an appurtenant easement have "one terminus on the land of the party claiming it" is not satisfied.

*Id.* at 589, 514 S.E.2d at 137–38.

Because the Windham deed referred to the language of the contract of sale, which reserved an easement in favor of "Seller" only, and Covington no longer owned the Riddle tract at the time he deeded the Windham tract, the majority further found an appurtenant easement was not created for the benefit of the Riddles as in *Springob*. *Windham*, 370 S.C. at 419–20, 635 S.E.2d at 560–61.

In contrast, the dissent found that an appurtenant easement was established in the contract for the sale of the land from Covington to Windham. *Id.* at 421–22, 635 S.E.2d at 561. In reaching this conclusion, the dissent focused on when the easement was created and distinguished the instant case from *Haselden* and *Springob*. The dissent believed that the contract of sale between Windham and Covington, rather than the deed, was "the instrument that established the legal relationship between the parties" and was "the functional equivalent

of a conveyance coupled with a method of financing." *Id.* at 422, 635 S.E.2d at 561.

Although the dissent believed that "no discussion of the requirement that an appurtenant easement have one terminus on the land of the party claiming" was necessary, the dissent felt compelled to distinguish *Springob* because the majority heavily relied on that decision. *Id.* at 423, 635 S.E.2d at 562.

In distinguishing that case, the dissent noted that in *Springob,* the person who reserved the easement never owned the purported dominant estate, only owning at one time the servient estate. In contrast, Covington "unquestionably owned the dominant estate at the time the contract was entered into." *Id.* at 423, 635 S.E.2d at 562. Secondly, the dissent did not find dispositive the fact that the Riddle deed did not create an appurtenant easement. The dissent reasoned that "there is no necessity to expressly mention an easement appurtenant when conveying the dominant estate." *Id.* Because "all the elements necessary for the creation of an easement appurtenant were in existence at the time the contract was entered into between Covington and Windham," the dissent concluded that the later conveyance of " 'bare legal title' was a required fulfillment of the contractual terms already set in stone." *Id.* at 423–24, 635 S.E.2d at 562.

The Riddles petitioned for and were granted a writ of certiorari for this Court to review the decision of the Court of Appeals.

## DISCUSSION

The Riddles assert the Court of Appeals erred in holding that the easement created through the sales of two parcels by Covington, a common grantor, was an easement in gross rather than an appurtenant easement. Relying primarily on the dissent, the Riddles claim that under the majority's analysis "the nature of this transaction [an installment land contract] erects an insurmountable obstacle to the easement's being recognized as appurtenant." Although the Riddles do not dispute that Covington retained "title ownership" of the servient estate after the 1992 sale to Windham, they contend the sales contract conveyed to Windham the most significant rights in the property. Thus, the Riddles' right of access "was

described and reserved in the 1992 sales agreement." As will be discussed, we agree with the majority opinion in the Court of Appeals' decision and specifically reject the reasoning in the dissenting opinion.

"An easement is a right which one person has to use the land of another for a specific purpose, and gives no title to the land on which the servitude is imposed." *Douglas v. Med. Investors, Inc.,* 256 S.C. 440, 445, 182 S.E.2d 720, 722 (1971) (citations omitted). "An easement is therefore not an estate in lands in the usual sense." *Id.* An easement may be created by reservation in a deed. *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 419, 143 S.E.2d 803, 806 (1965).

In construing a deed, "the intention of the grantor must be ascertained and effectuated, unless that intention contravenes some well settled rule of law or public policy." *Wayburn v. Smith,* 270 S.C. 38, 41–42, 239 S.E.2d 890, 892 (1977). "In determining the grantor's intent, the deed must be construed as a whole and effect given to every part if it can be done consistently with the law." *Gardner v. Mozingo,* 293 S.C. 23, 25, 358 S.E.2d 390, 391–92 (1987). "The intention of the grantor must be found within the four corners of the deed." *Id.*

In *Tupper v. Dorchester County,* this Court distinguished between the types of easements, stating:

The character of an express easement is determined by the nature of the right and the intention of the parties creating it. 25 Am.Jur.2d *Easements and Licenses* § 13 (1966). An easement in gross is a mere personal privilege to use the land of another; the privilege is incapable of transfer. *Sandy Island Corp. v. Ragsdale,* 246 S.C. 414, 143 S.E.2d 803 (1965). In contrast, an appurtenant easement inheres in the land, concerns the premises, has one terminus on the land of the party claiming it, and is essentially necessary to the enjoyment thereof. *Id.; Smith v. Commissioners,* 312 S.C. 460, 441 S.E.2d 331 (Ct.App.1994); *Carolina Land Company, Inc. v. Bland,* 265 S.C. 98, 217 S.E.2d 16 (1975); *Sandy Island Corp. v. Ragsdale,* supra; 12 S.C. Juris. *Easements* § 3. It also passes with the dominant estate upon conveyance. *Carolina Land Co., Inc. v. Bland,* supra. Unless an easement has all the elements

necessary to be an appurtenant easement, it will be characterized as a mere easement in gross. 12 S.C. Juris. *Easements* § 3(c). Where language in a plat reflecting an easement is capable of more than one construction, that construction which least restricts the property will be adopted. *Hamilton v. CCM, Inc.*, 274 S.C. 152, 263 S.E.2d 378 (1980).

*Tupper v. Dorchester County*, 326 S.C. 318, 325–26, 487 S.E.2d 187, 191 (1997).

 Applying the foregoing to the facts of the instant case, we agree with the Court of Appeals' majority opinion. Under an installment land contract, legal title to the subject property is not transferred to the buyer until the purchase price is satisfied. *Lewis*, 351 S.C. at 170–73, 568 S.E.2d at 363–64. Therefore, pursuant to the Windham sales contract, Covington retained legal title to the Windham tract until 1998, when Windham paid off the purchase price. The 1998 Windham deed stated that it was subject to the easement in favor of Covington, the seller, as set forth in the 1992 sales contract. Because Covington retained legal title to both the Windham tract and the Riddle tract in 1992, an easement could not have been created by the 1992 installment land contract. *Haselden*, 167 S.C. at 539, 166 S.E. at 635.

 Furthermore, we agree with the Court of Appeals that the 1998 Riddle deed did not create an appurtenant easement. Before Covington conveyed legal title to Windham in 1998, he sold tract 1–A to the Riddles in 1997. Given that the Windham deed reserved the easement to Covington and he sold the dominant estate to the Riddles in 1997, the "terminus" requirement for an appurtenant easement was not met similar to the conveyance in *Springob*. *See Shia v. Pendergrass*, 222 S.C. 342, 351, 72 S.E.2d 699, 703 (1952) (noting the absence of a terminus on property is fatal to claim of an appurtenant easement).

In reaching this conclusion, we have carefully considered the dissenting opinion in the Court of Appeals' decision.[1] For

---

1. We have also reviewed the dissent in *Springob* and several secondary sources which have advocated for this Court to overrule the common law requirements for appurtenant easements. These authors have characterized the current easement law of South Carolina to be "aca-

several reasons, we believe that an adoption of that approach would create unforeseeable ramifications in this state's current property jurisprudence.

First, the inherent nature of an installment land contract, an unrecorded document, precludes the creation of an appurtenant easement at the point the contract is entered into by the parties. With an installment land contract, the seller retains legal title until the purchase price is fully paid. Thus, an installment land contract is not, as asserted by the Riddles, tantamount to a conveyance. If an appurtenant easement were created at the point the contract was entered into, problems would arise if the buyer defaulted before legal title was conveyed by a deed. The question would then become whether the easement would be extinguished when the buyer defaulted or if it transferred to the next buyer. Accordingly, we find it is essential to retain the two-part procedure of an installment land contract which requires not only a contract of sale but also a deed to convey ownership to

---

demic" and "archaic." According to these authors, the trend among other jurisdictions is to overrule the common law which would favor effectuating a grantor's intent to create an interest, *i.e.*, an easement, to a third party. *See Springob*, 334 S.C. at 595–99, 514 S.E.2d at 141–43 (Anderson, J., dissenting) (outlining cases from other jurisdictions where the appellate courts rejected the common law rule that one cannot reserve an easement to a stranger to the title); John E. Lansche, Jr., *Ancient, Antiquated, & Archaic: South Carolina Fails to Embrace the Rule that a Grantor May Reserve an Easement in Favor of a Third Party*, 52 S.C. L.Rev. 269 (2000) (addressing current easement law in South Carolina and advocating a change in the "ancient-common-law" principles); Michael A. Carbone, *The Unity of Title Doctrine and Strangers to the Title: A Slowly Dying Remnant of Ancient Common Law?*, 21 QLR 597, 599–600 n. 31 (2002) (citing *Springob* for "unity of title doctrine" (UTD) as representative of the majority rule and stating "[t]he general common law rule, though worded differently [than UTD], is that in a deed, neither a reservation nor an exception in favor of a stranger to the instrument can, by force of ordinary words of exception or reservation, create in the stranger any title, right, or interest in or respecting the land conveyed"); *see also* W.W. Allen, Annotation, *Reservation or Exception in Deed in Favor of Stranger*, 88 A.L.R.2d 1199 (1963 & Supp.2008) (discussing "[t]he broad rule grounded in the precedents and technicalities of common law, and which still generally prevails, is that in a deed neither a reservation nor an exception in favor of a stranger to the instrument can, by force of ordinary words of exception or reservation, create in the stranger any title, right, or interest in or respecting the land conveyed").

the property after the purchase price has been satisfied. Unlike the Riddles, we do not view these requirements as "technical," but rather, find they serve a legitimate purpose for all parties involved in installment land contracts. Therefore, we reject the Riddles' contention that an appurtenant easement may be created simply by entering into an installment land contract.

Secondly, we believe this radical approach to appurtenant easements is based more on efficiency than legal analysis. *See* John E. Lansche, Jr., *Ancient, Antiquated, & Archaic: South Carolina Fails to Embrace the Rule that a Grantor May Reserve and Easement in Favor of a Third Party*, 52 S.C. L.Rev. 269, 285 (2000) ("By overruling the common law, states like California and Kentucky made it easier for potential buyers conducting a title search to find encumbrances on a specific tract of land. Under the common-law rule, if a grantor wanted to reserve an easement in favor of a third party the grantor had to execute a deed of easement to that third person. Next, the grantor had to execute a deed to the grantee."). Although the common law approach may require additional steps in creating an easement in favor of a third party, it is not a task that is insurmountable. Therefore, we decline to overrule settled property law.

Finally, even though this decision may appear to be inequitable, we note the Riddles are not without other irrigation options given their property borders the Little River.[2] Thus, it is questionable whether an appurtenant easement is essentially necessary to the enjoyment of the property. *See Kershaw v. Burns*, 91 S.C. 129, 133, 74 S.E. 378, 379 (1912) ("The principle is well settled that a right of way appurtenant cannot be granted, unless it is essentially necessary to the enjoyment of the land to which it appertains."); *Ballington v. Paxton*, 327 S.C. 372, 380, 488 S.E.2d 882, 887 (Ct.App.1997) ("An appendant or appurtenant easement must inhere in the land, concern the premises, have one terminus on the land of the party claiming it, and be essentially necessary to the enjoyment thereof.").

---

**2.** On cross-examination, Covington acknowledged that the Riddles' property fronts the Little River, which is the same river from which they get the water for the irrigation system.

## CONCLUSION

Based on the foregoing, we hold the Court of Appeals correctly found the Riddles do not have an appurtenant easement for access and irrigation purposes across Windham's property. Accordingly, the decision of the Court of Appeals is **AFFIRMED.**

TOAL, C.J., WALLER and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in result only.